COMMONWEALTH *vs.* ANN ELIZABETH NAVARRO.

No. 93-P-1537.

Middlesex. September 14, 1994. - August 24, 1995.

Present: SMITH, GILLERMAN, & IRELAND, JJ.

*Search and Seizure*, Probable cause, Securing of premises, Exigent circumstances. *Probable Cause. Constitutional Law*, Search and seizure. *Evidence*, Hearsay. *Joint Enterprise. Controlled Substances. Practice, Criminal*, Required finding.

Police officers acted properly to secure an apartment while waiting for a search warrant to issue and, in light of exigent circumstances, properly made a warrantless entry [163-164] and made a warrantless seizure of drugs and contraband in plain view [164-165]; further, a subsequent search of the apartment pursuant to the warrant was lawful [165].

At the trial of a complaint for possession of heroin with intent to distribute the judge erred in admitting in evidence certain hearsay testimony and in relying on that evidence in concluding that the defendant was engaged in a joint enterprise with another to distribute drugs. [165-167]

A criminal defendant's motion for a required finding of not guilty on so much of a complaint as alleged an intent to distribute heroin should have been allowed, where there was no evidence that she actually or constructively possessed a certain large quantity of heroin found and there was no competent evidence that she was engaged in a joint enterprise to distribute heroin. [167-170]

COMPLAINT received and sworn to in the Somerville Division of the District Court Department on October 10, 1991.

On appeal to the jury session of the Cambridge Division, a pretrial motion to suppress evidence was heard by *Dyanne J. Klein*, J., and the case was heard by *Jonathan Brant*, J.

*Dennis M. Powers* for the defendant.

*Marguerite T. Grant*, Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant was the subject of a three-count complaint charging her with (1) possession of heroin with intent to distribute, (2) illegal possession of Xanax, and (3)

possession of a hypodermic needle. After her suppression motion was denied, she was found guilty of all three counts at a bench trial. She appealed to a jury-of-six session. Her suppression motion was again denied, and she then waived a jury. After a jury-waived trial she was found guilty of all three counts.

On appeal, the defendant argues that the judge committed error in (1) denying her suppression motion, (2) allowing hearsay testimony in evidence, and (3) denying her motion for a required finding of not guilty on the charge of possession of heroin with intent to distribute.[1]

1. *Denial of the defendant's suppression motion.* The defendant filed a suppression motion in which she claimed that the police conducted a warrantless entry and search of the premises where she was arrested and that no exigent circumstances existed to justify a warrantless search. She also claimed that a subsequent search pursuant to a warrant was illegal because there was no probable cause to support the issuance of the warrant.

We summarize the judge's findings. We supplement those findings with certain undisputed facts from the testimony of the only witness at the suppression hearing — a police officer, one Inspector Hyde.

Hyde, who was experienced in narcotics investigations, telephoned a certain number in October, 1991, and asked to speak to "Ann." He also told the person who answered the phone that he wanted to buy some heroin. He then drove to a certain location in Somerville where he called the same number again and talked to the same person. That person was not the defendant. Then he waited by the telephone as instructed.

After about ten or fifteen minutes, Deborah McLean drove up in a car and parked opposite where Hyde was standing.

---

[1]The defendant also claims that the judge improperly admitted the certificates of analysis of the Class E substance. We disagree and hold that the judge properly accepted the certificates of analysis pursuant to G. L. c. 111, § 13, as creating a rebuttable presumption that the Xanax pills seized from the defendant's pocketbook were Xanax, a Class E substance.

She gave him three glassine bags, each bearing a blue skull-and-crossbones logo, for $75. Hyde then arrested McLean. She told him that there were more drugs at her apartment. She also stated that the defendant was sleeping in the apartment.

a. *Warrantless entry.* Hyde made arrangements for a search warrant to issue. While waiting for the warrant, Hyde and another officer went to the apartment to secure it. The police were concerned that, when McLean did not return, the defendant, who remained in the apartment, might become alarmed and remove or destroy the drugs.

At the apartment, the officers noticed that it was listed under McLean's name. Hyde knocked, and the defendant opened the door. Hyde identified himself and asked to speak to her. Just inside the front door to the apartment, Hyde told the defendant that McLean had been arrested for distribution of heroin and that the police were applying for a warrant to search the apartment. The defendant was then informed that she could either stay in the apartment to await the arrival of the warrant or leave, but, if she left, anything she took with her would be subject to search. The defendant said she wanted to leave and take some clothes with her.

The defendant walked toward the rear of the apartment. Hyde followed her. The defendant entered a bedroom and "lunged" toward a bed. Hyde, concerned about his safety, also lunged and grabbed whatever the defendant was trying to reach. It was a woman's open pocketbook. Hyde saw in plain view, inside the open pocketbook, a hypodermic needle and syringe, five glassine bags containing white powder, and clear plastic bags containing pills. The five bags of powder (later identified as heroin) bore the same blue skull-and-crossbones logo as the three bags that Hyde had bought from McLean. The defendant was arrested. Further search of her pocketbook revealed five empty glassine bags, $460 in cash, and the defendant's Massachusetts driver's license. Hyde did not notice anything else in plain view on the bed.

At the time the police went to the apartment, they were in the process of obtaining a search warrant. Their purpose in

going to the apartment was to secure it to prevent the removal or destruction of drugs before they were able to search it pursuant to the warrant. "Securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of the dwelling or its contents." *Commonwealth* v. *Blake*, 413 Mass. 823, 829 (1992), citing *Segura* v. *United States*, 468 U.S. 796, 810 (1984). Here, the police had learned from McLean that there were drugs in the apartment and that another person was also in the apartment, although sleeping. The police, therefore, had probable cause to believe that heroin was present in the apartment and, because the apartment was occupied, that there was a danger the heroin would be removed or destroyed. The warrantless entry by the police into the apartment was reasonable in the circumstances.

b. *Warrantless seizure of contraband from the defendant's pocketbook.* The defendant argues that the warrantless seizure of the drugs and hypodermic needle from her handbag was unreasonable and not based on exigent circumstances. We disagree.

After securing the premises while awaiting the arrival of a search warrant, the police cannot conduct a search until a copy of the warrant is in their possession at the premises to be searched. *Commonwealth* v. *Guaba*, 417 Mass. 746, 752-756 (1994). Here, the police did not conduct a search before having the warrant in their possession.

The same exigent circumstances that permitted a warrantless entry to secure the apartment — prevention of the destruction or removal of the drugs — allowed Hyde to follow the defendant to the rear of the apartment and into a bedroom. Once the defendant "lunged" toward her pocketbook on the bed, an additional factor — fear for his personal safety — allowed Hyde to grab the pocketbook. Because the drugs and needle were in plain view inside the open pocketbook and he was lawfully on the premises, Hyde could seize them without a warrant. *Horton* v. *California*, 496 U.S. 128,

141-142 (1990). The subsequent search of the pocketbook was proper as it was incident to the defendant's arrest.

c. *Search pursuant to a warrant.* After Hyde obtained a search warrant, he returned to the apartment with other officers. There was a blanket on the bed near where Hyde had seized the defendant's pocketbook. One of the officers picked up the blanket, and a brown paper wrapper fell out onto the sheets. It contained twenty-seven glassine bags of white powder (later identified as heroin) which bore the same blue skull-and-crossbones logo as the three bags that Hyde had bought from McLean and the five bags that Hyde had seized from the defendant. The twenty-seven bags were broken down into two bundles of ten, each wrapped with an elastic band, plus an additional seven bags, also wrapped with an elastic band. Elsewhere in the apartment the police found metal spoons, a beeper, and hypodermic needles.

The defendant argues that, because Hyde's warrantless entry into the apartment was illegal, his subsequent observations were the "fruit" of that illegality and could not be used to support probable cause for the warrant. The short answer is that Hyde's entry into the apartment was not illegal. In addition, apart from Hyde's observations, there was other information in the warrant application, including McLean's statement that drugs were in the apartment, that supported probable cause for its issuance. See *Commonwealth v. Blake*, 413 Mass. at 830.

2. *Admission of hearsay evidence at the trial.* Over an objection, Hyde was allowed to testify at the trial that on October 8, 1991, he made a telephone call and asked for "Ann." He testified, also over an objection, that he told the person who answered the telephone, whom he later identified as McLean, that he wanted to buy heroin. The Commonwealth argued that Hyde's testimony concerning his statements to the person who answered the telephone was admissible because it was made during the course of a joint enterprise. See *Commonwealth v. Cartagena*, 32 Mass. App. Ct. 141, 143-144 (1992) (hearsay statements made outside the presence of a defendant may be admitted against the defendant if made

during the course of a joint enterprise and if there is sufficient nonhearsay evidence to establish an adequate probability that the declarant and the defendant were engaged in the joint enterprise). The defendant claims the judge committed error because Hyde's statements were hearsay that were not made during the course of a joint enterprise.

We first address a technical problem concerning the defendant's objection to the admission of the evidence. After the defendant objected to the testimony relating to what Hyde said to the person who answered the telephone call, the judge admitted the testimony de bene. Thereafter, the defendant did not move to strike that portion of Hyde's testimony. "Where evidence is admitted conditionally it is incumbent upon the objecting party later to move to have it struck . . . ." *Peterson, petitioner*, 354 Mass. 110, 115 (1968). Because of the lack of the motion to strike, our review is limited to the substantial risk of a miscarriage of justice standard, if we find error.

The admission of Hyde's testimony concerning his statement to the person who answered the telephone call was error. The statements were made by Hyde, not by McLean or the defendant, the two persons whom the Commonwealth alleged were engaged in a joint enterprise to distribute drugs. It follows that the hearsay statements of Hyde were not admissible against the defendant because they were not those of either person that the Commonwealth alleges were engaged in the joint enterprise.

The record demonstrates that the judge relied on Hyde's statements on the telephone to establish a joint enterprise. At one point in the trial, the judge remarked that Hyde, by asking for "Ann" during the telephone call, was "apparently looking for the defendant." Later, the judge stated that "[t]he Commonwealth's position is that the initial call was to 'Ann' and he then met with Ms. McLean. The indication is, therefore, there is a relationship." The judge, as fact finder, apparently relied on the hearsay evidence in finding the defendant guilty of the charge of possession with intent to dis-

tribute heroin. See Liacos, Massachusetts Evidence § 8.2.3 (6th ed. 1994) (indicating that such extrajudicial conversations are "treated as nonhearsay" and are admitted in evidence only "to prove the nature of a place or thing associated with the conversations"). Because, as we conclude in the next section, the Commonwealth failed to introduce sufficient evidence, apart from Hyde's statements, to demonstrate a joint enterprise between McLean and the defendant to distribute drugs, we ordinarily would order a new trial on that count; because of the defendant's position on the sufficiency of the evidence issue, however, we need not do so.

3. *Denial of motion for required finding of not guilty on intent to distribute charge.* The defendant argues that her motion for a required finding of not guilty on the charge of possession of heroin with intent to distribute should have been allowed on so much of the count as alleged intent to distribute. She acknowledges that she possessed at least the five bags of heroin found in her pocketbook but claims that the Commonwealth presented insufficient evidence that she had actual or constructive possession of the twenty-seven bags of heroin found in the blanket on the bed.[2] In viewing the judge's decision, we inquire whether the evidence considered in the light most favorable to the Commonwealth was sufficient to satisfy a reasonable trier of fact of the defendant's intent to distribute drugs. *Commonwealth* v. *Latimore,* 378 Mass. 671, 677-678 (1979).

First, the Commonwealth claims that the defendant had actual possession of the twenty-seven glassine bags of heroin, i.e., that a rational trier of fact could reasonably infer that the twenty-seven glassine bags of heroin, bundled together and each stamped with a skull-and-crossbones logo, fell out of the defendant's open pocketbook when she lunged for it.

---

[2]Hyde, an experienced investigator of narcotics cases, testified in answer to a hypothetical question that, assuming thirty-two bags of heroin (twenty-seven bags in the blanket; five bags in the defendant's pocketbook) totalling .72 grams were found at a location along with a beeper and $460, in his opinion, the heroin was not for personal use but rather for distribution. He was not asked whether the five bags of heroin found in the defendant's pocketbook were, in his opinion, for personal use or distribution.

Therefore, according to the Commonwealth, the twenty-seven bags, coupled with the contents of her pocketbook, provided ample evidence of the defendant's intent to distribute. Second, the Commonwealth argues that the fact finder could reasonably infer that the defendant was trying to hide the twenty-seven packets under the cover in the dark.

We recognize that in cases of this type "it is not essential that the inferences drawn should be only necessary inferences. It is enough that [the inferences] be reasonable and possible." *Commonwealth* v. *Merrick*, 255 Mass. 510, 514 (1926) (citations omitted). *Commonwealth* v. *Martino*, 412 Mass. 267, 272 (1992). We also recognize that "a conviction [cannot] rest upon the piling of inference upon inference or conjecture and speculation." *Commonwealth* v. *Armand*, 411 Mass. 167, 170 (1991). The entire incident in the bedroom took place before the eyes of Hyde, an experienced investigator. There was nothing in his testimony that even remotely suggests that the twenty-seven bags of heroin fell out of the defendant's pocketbook or that she was attempting to hide the drugs under the blanket.[3] There was no evidence that the defendant had actual possession of the twenty-seven bags.

We next consider the Commonwealth's theory that the defendant constructively possessed the drugs. "Possession implies 'control and power,' . . . exclusive or joint . . . , or, in the case of 'constructive possession,' knowledge coupled with the ability and intention to exercise dominion and control." *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989), quoting from *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. 495, 498 (1984). The drugs found in the defendant's pocketbook bore the same logo as the drugs later found by the police. It could reasonably be inferred that the defendant was aware of the presence of drugs in the apartment. *Commonwealth* v. *Pratt*, 407 Mass. 647, 652 (1990). That inference, however, does not dispose of the question whether the defendant had constructive possession of the drugs; the Commonwealth must also show that the defendant had the "abil-

---

[3]In fact, Hyde testified that he did not notice anything in plain view on the bed when he seized the defendant and her pocketbook.

ity and intention to exercise dominion and control" over the drugs. *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 617 (1990), *S.C.*, 410 Mass. 1005 (1991). "Presence and awareness alone do not constitute evidence which warrants an inference of ability and intention to exercise control of the illicit substance." *Commonwealth* v. *Brown*, 34 Mass. App. Ct. 222, 226 (1993). Presence and knowledge, however, "supplemented by other incriminating evidence, 'will serve to tip the scale in favor of sufficiency.'" *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977), quoting from *United States* v. *Birmley*, 529 F.2d 103, 108 (6th Cir. 1976).

Here, the apartment was in McLean's name, not the defendant's. There was no evidence that the defendant "rented, occupied, spent a great deal of time at or exercised control over the apartment or its contents." *Commonwealth* v. *Caterino*, 31 Mass. App. Ct. 685, 689 (1991). No personal papers of the defendant nor any of her clothing were found in the apartment. *Ibid.*, and cases cited. The fact that the defendant had in her possession five bags of heroin with the same logo as the twenty-seven bags found in the blanket standing alone, does not establish a nexus between the drugs found in her pocketbook and the drugs found in the blanket, nor does it warrant an inference that the defendant was a seller rather than a user of drugs. The amount of cash found in her pocketbook ($460) does create suspicion about the defendant's activities. However, "it is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense." *Commonwealth* v. *Armand*, 411 Mass. at 170, quoting from *Commonwealth* v. *Latimore*, 378 Mass. at 677. Other items in the pocketbook, the hypodermic needle and syringe, demonstrate that it was as likely that the defendant was a purchaser and user of drugs, as that the defendant had the ability and intention to distribute the drugs. *Commonwealth* v. *Reid*, 29 Mass. App. Ct. 537, 539 (1990). *Commonwealth* v. *Dennis*, 33 Mass. App. Ct. 666, 671 (1992), *S.C.*, 416 Mass. 1001 (1993). There was not sufficient evidence to warrant a trier of fact to find that the defendant constructively

possessed the twenty-seven bags of heroin found in the apartment.

Finally, the Commonwealth argues that McLean and the defendant were engaged in a joint enterprise to sell drugs and, therefore, jointly possessed the drugs found in the blanket. We have held that it was error to admit Hyde's statements under the joint enterprise exception to the hearsay rule. Other evidence in the Commonwealth's joint enterprise theory include the facts that the drugs found in the defendant's pocketbook bore the same logo as those sold by McLean to Hyde and those found in the apartment, and that the defendant was present in McLean's apartment where the drugs were found. This evidence, apart from Hyde's statements on the telephone, was not sufficient to warrant an inference that the defendant and McLean were engaged in a joint enterprise.

The judgment on the count for possession with intent to distribute is vacated, and the case is remanded to the District Court for sentencing on the lesser included offense of possession of heroin. The other judgments are to stand.

*So ordered.*