## Commonwealth *vs.* Nicholas Delarosa.

No. 98-P-1627.

Hampden. April 14, 2000. - December 28, 2000.

Present: Beck, Dreben, & Rapoza, JJ.

*Controlled Substances. Firearms. Evidence,* Hearsay. *Practice, Criminal,* Assistance of counsel, Judicial discretion, Instructions to jury. *Constitutional Law,* Assistance of counsel.

At the trial of indictments for trafficking in cocaine and possession of a firearm without a firearm identification card, the evidence was sufficient to warrant the jury's conclusion that the defendant had constructive possession of a quantity of cocaine found by police pursuant to a warrant in a hidden compartment in an apartment rented by the defendant [626-628]; however, there was not sufficient evidence that the defendant intended to or did exercise dominion or control over the firearm, which was found in the same compartment [628].

At a criminal trial, testimony from a police officer regarding "information received" from an informant was properly admitted with limiting instructions to explain why the police took certain actions. [628-630]

At a criminal trial, a police officer's repeated inadmissible and improper responses that the defendant was not cooperative were properly addressed by the judge's striking the testimony and giving forceful curative instructions: defense counsel's failure to move for a mistrial was not, in the circumstances, manifestly unreasonable. [630-632]

Indictments found and returned in the Superior Court Department on September 26, 1996.

The cases were tried before *Constance M. Sweeney,* J.

*Leslie W. O'Brien* for the defendant.

*Sidney E. Reavey,* Assistant District Attorney, for the Commonwealth.

Beck, J. The defendant was convicted of trafficking in over 200 grams of cocaine, two counts of assault and battery with a dangerous weapon (a motor vehicle), and possession of a firearm without a firearm identification card. (The jury found the codefendant, Luis Martinez, not guilty of trafficking and posses-

sion of a firearm.) On appeal, the defendant argues that (1) there was insufficient evidence he had constructive possession of 500 grams of cocaine and a gun found in a "well-hidden secret compartment"; (2) the admission of hearsay violated his constitutional rights; and (3) his counsel was constitutionally ineffective for not requesting a mistrial when a police officer testified that the defendant refused to cooperate after the officer read him his rights under *Miranda* v. *Arizona*, 384 U.S. 436 (1966). With the exception of the firearm charge, we affirm.

*Facts.* The essential facts are not in dispute. On the afternoon of September 7, 1996, about a dozen Springfield police officers were participating in an investigation and surveillance of activities at an apartment building located at 135 Belmont Avenue, Springfield. At about 4:00 P.M., the defendant and Luis Martinez left the apartment building through a rear entrance and drove off in a gray Honda Accord. The car was registered to Jose Lopez. The defendant drove to the Diaz Supermarket. The two men entered the market for a "short time," got back in the car, and returned to the apartment building. Two hours later, the defendant and Martinez again left the apartment building through the rear door, and drove away in the Honda. This time they passed through the same supermarket parking lot and drove to Chicopee. In Chicopee, Martinez got out of the Honda and walked up to the front porch of a house at 13 Cochran Street. There was a man on the porch. Martinez gave the man a small item and the man gave Martinez some paper currency in exchange. Martinez and the defendant then returned to 135 Belmont Avenue.

At about 8:30 P.M., Officer Joselito Lozada received a telephone call from "an individual" who apparently informed Lozada that the defendant would soon be making a delivery. Lozada notified the other officers and the team prepared to intercept the defendant. Lozada stationed himself opposite apartment 7A behind a fire door which had a small window in it. He saw the defendant and Martinez leave apartment 7A and go down a staircase to the basement. The defendant was carrying a brown paper bag. After radioing the officers in the parking lot behind the building, Lozada followed the defendant and Martinez through the basement and into the parking lot. There he saw the defendant get into the gray Honda. As the defendant began to drive away, unmarked cruisers pulled in front of and behind the Honda. Officers on foot also appeared and identified

themselves as police officers. In response, the defendant put the Honda in reverse and sped backwards. In doing so, he struck the cruiser behind him, hitting one of the officers who was getting out of the cruiser and knocking the cruiser into another officer. The Honda stopped after striking a cement pillar. As a number of officers converged on the Honda, the defendant reached down in front of his seat. Both the defendant and Martinez refused to unlock their doors. At least in part in response to movement inside the Honda, one of the officers smashed the driver's side window and the officers forcibly removed the men from the Honda. The defendant responded by "kicking and grabbing onto the steering wheel" and attempted to grab the cement pillar as he was pulled out of the car. After handcuffing the defendant, the officers put him in the back seat of a marked cruiser, where he tried to kick the back windows out.

The police searched the Honda in the place they had seen the defendant reaching and found a "small brown McDonald's bag" containing what appeared to be cocaine. The cocaine was wrapped in a paper towel, and then in tinfoil, before being placed in the McDonald's bag. Sergeant Thomas Meleady removed a key ring from the Honda's ignition. He and several other officers went down to the basement and up the stairs to apartment 7A. One of the keys on the ring fit the door of apartment 7A. After determining that there was no one in apartment 7A, they secured the apartment and waited for Lozada to return with a warrant. Lozada and another officer secured apartment 9B.

After obtaining a warrant, the police searched both apartments 9B and 7A. The former appeared uninhabited and had apparently suffered water damage. That apartment yielded no contraband or other evidence. (They also searched 7B with the consent of the occupant and found nothing there either.)

A search of apartment 7A yielded different results. Officer Williams, who had attended "secret compartment school, . . . a [Drug Enforcement Administration] federally funded school, that teaches . . . about hidden compartments," was assigned to search the rear bedroom. After checking and removing the contents of the closet, Williams noticed "a fresh strip of molding running from one end of the closet door to the other end of the closet door, with fresh nailing in it." When Williams grabbed the molding to see if he could pull it off, "the entire closet floor came up." In the compartment Williams and one or two other

officers found cocaine, McDonald's bags identical to the one containing cocaine that was found in the Honda, packaging material, cut powder containers, scales, other drug paraphernalia, and a handgun. There were also two Dominican Republic passports, neither of which was in the defendant's name. Other documents were found in apartment 7A as well, none of which connected the defendant to the apartment, including rent receipts to Wanda Lopez and Jose Lopez, utility bills for Wanda Nunez, and phone bills for Jose Lopez.

The cocaine found in the car weighed approximately seventy grams and had a purity of almost seventy-five percent. There were five other packages of cocaine in the hidden compartment with the following weights and purity: 99.33 grams, 189% purity [*sic*]; 242.8 grams, 40% purity; 7.13 grams (no evidence as to purity); 58.57 grams, 46.56% purity; and 96.93 grams, 78.22% purity.

The building manager testified that the defendant had been staying at 135 Belmont Avenue for a few months. During the summer he had been staying in apartment 9B, which was rented to Jose Lopez at the time, although the building manager had not seen Lopez in a couple of months. The defendant had paid the rent for apartments 7A, 7B, and 9B a couple of times and had returned the keys to apartment 9B earlier on September 7. Lozada testified that at the police station the defendant said he had just arrived in Massachusetts the day before and was staying with a friend whose name he could not remember.

1. *Constructive possession.* At the conclusion of the Commonwealth's evidence, the defendant moved for a required finding of not guilty on the ground that the Commonwealth had not introduced sufficient evidence he possessed either the cocaine or the gun. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). The Commonwealth's theory of the case was that the defendant had constructive possession of both.

In order to prove that the defendant had constructive possession of the cocaine and gun found in the hiding place in apartment 7A, the Commonwealth was required to show that the defendant had "knowledge [of the cocaine and the gun] coupled with the ability and intention to exercise dominion and control" of them. *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989), quoting from *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. 495, 498 (1984). "Proof of possession of a controlled substance may be established by circumstantial evidence, and

the inferences that can be drawn therefrom." *Commonwealth* v. *Brzezinski*, 405 Mass. at 409, quoting from *Commonwealth* v. *LaPerle*, 19 Mass. App. Ct. 424, 426 (1985). We examine the evidence supporting possession in the light most favorable to the Commonwealth. See *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. at 499.

First, there was evidence connecting the defendant to apartment 7A. Most clearly, the defendant was seen coming out of that apartment carrying a small brown paper bag just before his arrest. He had been seen coming out of the same rear door of 135 Belmont Avenue two times earlier in the day. The police had also seen him at 135 Belmont Avenue four times in July of the same year. Moreover, he had paid the rent on apartment 7A, as well as other apartments in the building, on more than one occasion. The keys for apartment 7A were on the same key ring as the keys for the Honda that the defendant was driving at the time of his arrest.

The police retrieved a small brown paper bag from the place in the Honda where the defendant was seen to be reaching just before his arrest. The bag recovered from the location had a McDonald's logo and was identical to bags found in the secret hiding place in apartment 7A. "In some cases a defendant's connection to a stash of narcotic drugs [may be] established largely by the close similarity of the narcotic drugs in his actual possession . . . to the narcotic drugs in the stash." *Commonwealth* v. *James*, 30 Mass. App. Ct. 490, 495, 496 n.8 (1991), citing as an example *Commonwealth* v. *Brown*, 12 Mass. App. Ct. 988 (1981), as well as out-of-State cases. Compare *Commonwealth* v. *Washington*, 50 Mass. App. Ct. 167, 169-170 (2000) (reversing allowance of motion for required findings of not guilty on ground of sufficiency of evidence of constructive possession in trafficking case). Contrast *Commonwealth* v. *Cruz*, 34 Mass. App. Ct. 619, 621-622 (1993) (mere presence even if combined with knowledge not sufficient to show joint control); *Commonwealth* v. *Navarro*, 39 Mass. App. Ct. 161, 167-169 (1995) (defendant at apartment in possession of bags of heroin with skull and cross bones similar to those police had purchased, along with syringe, but no evidence defendant rented, occupied, or spent a great deal of time at apartment).

The cocaine in the bag had a high degree of purity of nearly seventy-five percent. Some of the cocaine found in the cache was of a similarly high purity. There were scales and packaging

materials on the kitchen table. The existence of this paraphernalia in plain view is another factor that may support an inference of constructive possession of a stash of a controlled substance. See *Commonwealth* v. *Pratt*, 407 Mass. 647, 652 (1990); *Commonwealth* v. *Rivera*, 31 Mass. App. Ct. 554, 557 (1991). Finally there was the defendant's concerted effort to escape from the police. See *Commonwealth* v. *James*, 30 Mass. App. Ct. at 497 (behavior of defendant and his group in response to arrival of police relevant strand of evidence connecting defendant to contraband in apartment).

The defendant claims that the Commonwealth has failed to meet its burden because it did not prove that no one remained in apartment 7A after he left. Apparently the defendant's theory is that there was a third person who actually controlled access to the hidden compartment who left the building during the melee in the parking lot. However, "[t]he Government . . . need not exclude every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt." *Commonwealth* v. *Merola*, 405 Mass. 529, 533 (1989), quoting from *United States* v. *Systems Architects, Inc.*, 757 F.2d 373, 377 (1st Cir.), cert. denied, 474 U.S. 847 (1985). See *Commonwealth* v. *Rivera*, 31 Mass. App. Ct. at 557. While perhaps not overwhelming, compare *Commonwealth* v. *Pratt*, *supra*, there was sufficient evidence from which a jury could have found that the defendant knew there was a substantial amount of high quality cocaine in the compartment; that he exercised dominion and control over it by removing seventy grams and putting it in a McDonald's bag that he also removed from the hidden compartment; and that he left the apartment with it.

On the other hand, the evidence regarding the gun is substantially weaker. While it seems likely the defendant knew the gun was in the compartment, there is insufficient evidence that he intended to or did exercise dominion or control over it. It was not in the Honda or on the defendant's person at the time of his arrest. Nor was there evidence, such as clothing or papers, of a personal connection between the defendant and the room in which the stash was located. Compare *Commonwealth* v. *Sadberry*, 44 Mass. App. Ct. 934, 935-936 (1998). (We also note that it is not entirely clear that the gun was actually introduced in evidence.)

2. *Hearsay.* Officer Lozada testified that, after receiving a telephone call from an individual, he

"informed [the other officers] that [he] received informa-
tion that there was going to be a delivery made at ap-
proximately 9:00 P.M. . . . And [the officers] knew what
apartment [the defendant] was in. [The defendant] had just
recently moved from one apartment to the other. So [the
officers] wanted to make sure that [they] saw [the
defendant] coming out of the apartment."

Defense counsel made a timely objection. The judge overruled
the objection and instructed the jury that what Lozada had said
was

"hearsay testimony . . . but it's being offered to explain
why people took certain actions. It's not to substitute for
your judgment as to what actually happened."

Assuming that the informant supplied the information about the
apartment as well as about the delivery, the defendant claims
that his State and Federal constitutional rights were violated
because he could not cross-examine the person who supplied
the information. However, the statement at issue here was not
hearsay because it was not admitted for the truth of the matter
asserted, but for another valid purpose. *Commonwealth* v. *Miller*,
361 Mass. 644, 659 (1972).

It is well-settled that the police may testify as to extrajudicial
statements in order to "explain what they did in consequence of
conversations with others." *Commonwealth* v. *Soto*, 45 Mass.
App. Ct. 109, 113 (1998) (collecting cases). Moreover, the
judge gave prompt and accurate instructions as to the use the
jury could make of the testimony. In any case, even supposing
the testimony had been admitted as evidence of an imminent
delivery, the jury had already heard evidence of an earlier
transaction, and it was not the delivery that was at issue but the
defendant's connection to the secret stash.

Nor was there any risk of a miscarriage of justice, see *Com-
monwealth* v. *Freeman*, 352 Mass. 556, 564 (1967), in Officer
Efantis's unobjected-to testimony that a maintenance worker
told the officers securing apartment 9B that the people who had
lived there had moved to apartment 7A. First, defense counsel
used the hearsay evidence to his advantage in his closing argu-
ment by emphasizing that this testimony conflicted with Loza-
da's testimony. (Testimonial inconsistencies and ineptness in the
investigation were primary themes in the defendant's clos-

ing argument.) Second, given the building manager's testimony connecting the defendant with three different apartments, this hearsay testimony had little additional probative force, especially because there was no physical evidence as to exactly where the defendant was living. There is no plausible reason to infer that the verdict might have been different but for the alleged error. *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986).

3. *Ineffective assistance of counsel.* Finally, the defendant claims his trial counsel was ineffective because he failed to move for a mistrial when Lozada testified that the defendant had refused to cooperate after having been read his rights under *Miranda* v. *Arizona*, 384 U.S. 436. We address the defendant's argument because the factual basis for the claim appears clearly on the record. See *Commonwealth* v. *Adamides*, 37 Mass. App. Ct. 339, 344 (1994).

The offending testimony was as follows:

> "I went in and I gave him his Miranda rights. We were trying to speak to him to see if he would . . . cooperate, but he refused to cooperate."

There was a prompt objection and the court ordered the testimony "stricken." The prosecutor then set out again. After establishing that Lozada had given the defendant his *Miranda* rights in Spanish, the prosecutor asked whether Lozada had a conversation with the defendant. Lozada answered, "No. He wasn't cooperating." There was an immediate objection.

An obviously exasperated judge called counsel to the side bar and characterized Lozada's testimony as "totally improper." She also noted that

> "this cop has done this before. I have had to sit here on other trials, and he does the same thing every time he takes the witness stand. I'm pretty tired of it. And the District Attorney's office better worry about it. He's not going to testify if this keeps up."

Upon the prosecutor's representation that he expected Lozada to relate a conversation with the defendant in "regards to where [the defendant] was living and why he was up here," the judge allowed a final series of questions on this point. The judge then instructed the jury as follows:

"Before we go to cross examination . . . you are to strike from any consideration any assertion that the defendant did not cooperate with the officer. That is gratuitous opinion that has been offered to you that, number one, was not asked of him. What was asked of him was what was said.

And you'll remember what I told you that, first of all, there's absolutely no requirement on anybody's part who is accused of a crime to cooperate with anyone, including the police. That is fundamental. It is immaterial whether anyone cooperates or not. And the officer knows that and should not have testified to that once, let alone twice.

Therefore, I have to strongly give you this instruction so you understand the importance of it and you understand that that is not to be considered by you. It should be disregarded by you. If anything, you should look on it negatively that for some reason the witness felt the need to offer it to you. If there is any negative inference to be drawn, it's to the one stating it, not towards the defendant."

There is no question that Lozada's testimony was inadmissible and improper and infringed on the defendant's rights pursuant to *Miranda* v. *Arizona, supra.* See *Doyle* v. *Ohio,* 426 U.S. 610, 619 (1976). However, the absence of a motion for a mistrial did not constitute "serious incompetency, inefficiency, or inattention of counsel." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). First, "[a] trial judge retains broad discretion in deciding whether to grant a mistrial." *Commonwealth* v. *Thomas,* 429 Mass. 146, 157 (1999). Second, "[p]rompt, forceful, critical instructions, such as were given here, can obviate any prejudice and eliminate any constitutional basis for a claim that a defendant was entitled to a mistrial." *Commonwealth* v. *Morgan,* 369 Mass. 332, 342 (1975), cert. denied, 427 U.S. 905 (1976). "[T]he judge's response here was sufficient to protect the defendant's constitutional rights." *Ibid.* Third, the judge's unusually forceful instructions were clearly critical of Lozada, the Commonwealth's primary witness. As suggested above, the defendant's closing argument focused on the inept investigation, e.g., the failure to dust for fingerprints, the failure to examine the trash Martinez deposited in a dumpster in the parking lot just before the police closed in, the haphazard manner in which the police reported and secured the evidence, and the conflicting

testimony of the nine officers who testified at trial. Given this approach, defense counsel could well have concluded that an instruction that was sharply critical of Lozada did more for the defense than another trial without either the allegedly offending testimony or the judge's critical comments. Certainly such a choice would not be manifestly unreasonable. See *Commonwealth* v. *Martin*, 427 Mass. 816, 822 (1998). In the face of the evidence of the defendant's efforts to avoid arrest in the parking lot, Lozada's testimony that the defendant did not cooperate can hardly have been a surprise to the jury. In these circumstances, the testimony was harmless beyond a reasonable doubt. See *Commonwealth* v. *Vermette*, 43 Mass. App. Ct. 789, 797-799 (1997). Compare *Commonwealth* v. *Mahdi*, 388 Mass. 679, 695-696 (1983) (setting out factors to consider in evaluating whether *Miranda* violation is harmless beyond a reasonable doubt).

The judgment of conviction and sentence on the charge of possession of a firearm is vacated, and the indictment is to be dismissed. The remaining judgments are affirmed.

*So ordered.*