COMMONWEALTH *vs.* LUIS PIMENTEL
(and fourteen companion cases[1]).

No. 07-P-431.

Hampden. October 8, 2008. - March 2, 2009.

Present: BERRY, McHUGH, & GRAINGER, JJ.

*Controlled Substances. Joint Enterprise. Evidence,* Constructive possession, Joint enterprise. *Practice, Criminal,* Assistance of counsel, Verdict, Waiver. *Waiver.*

The evidence at the jury-waived trial of indictments charging five codefendants with controlled substances violations was sufficient to convict three defendants on theories of constructive possession and joint venture [779-784]; however, the evidence with respect to the remaining two codefendants, consisting solely of their presence in a sparsely furnished, barricaded apartment, where drugs had recently been in plain view, was insufficient to support their convictions [784-786].

At a jury-waived criminal trial, the judge's factually inconsistent findings (i.e., convicting the codefendants of trafficking in cocaine while acquitting additional defendants of the same crime, at a separate trial, under almost identical evidence) did not warrant require reversal or a new trial. [786-787]

The record of a colloquy in a criminal matter provided a sufficient basis for the trial judge's conclusion that the defendant voluntarily and intelligently waived his right to a jury trial. [787-788]

INDICTMENTS found and returned in the Superior Court Department on August 18, 2004.

The case were heard by *Peter A. Velis,* J.

*Peter M. Onek,* Committee for Public Counsel Services, for Luis Pimentel.

*Deborah Bates Riordan (Theodore F. Riordan* with her) for Erik L. Montalban.

*William T. Harrington* for Emilio Garcia.

*Charles K. Stephenson (William W. Adams* with him) for Jorge Davila & another.

---

[1]Two against Luis Pimentel, three against Erik L. Montalban, three against Emilio Garcia, three against Jorge Davila, and three against Jose Acevedo.

*Bethany C. Lynch*, Assistant District Attorney, for the Commonwealth.

GRAINGER, J. Eight codefendants were tried for trafficking in cocaine, G. L. c. 94C, § 32E(*b*)(2), possession of heroin with intent to distribute, G. L. c. 94C, § 32(*a*), and violating the controlled substance law within one hundred feet of a public park or playground, G. L. c. 94C, § 32J. After a jury-waived trial in the Superior Court, the five defendants here on appeal were convicted of all charges. The remaining three defendants, Jonathan Maldonado, Mariano Gomez, and Nelson Gonzalez, were convicted of possession of heroin with intent to distribute and violating the controlled substance law within one hundred feet of a public park or playground. These three defendants, however, were acquitted of trafficking in cocaine. The Supreme Judicial Court affirmed the convictions of Maldonado, Gomez, and Gonzalez in *Commonwealth* v. *Gonzalez*, 452 Mass. 142 (2008).

The proceedings and facts are recited in detail by the Supreme Judicial Court in *Gonzalez*. We recount the evidence briefly, in the light most favorable to the Commonwealth. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). Holyoke police officers obtained a warrant to search an apartment on the basis of their surveillance of the apartment building and on the basis of purchases from the apartment by a confidential informant. When the officers went to the apartment to execute the warrant, they knocked on the door and heard scurrying. Officers then broke down the door with a battering ram and discovered eight men (the five defendants, as well as Maldonado, Gomez, and Gonzalez) in the living room of the sparsely furnished apartment.

Upon a search of the apartment, officers discovered a large quantity of cocaine, heroin, and money hidden at several locations in the living room, as well as a box of plastic baggies hidden in the dropped ceiling in the hallway between the living room and the kitchen. The officers ordered all the defendants to the ground. When an officer pulled Pimentel from the ground, he discovered three "dime bags" of cocaine concealed underneath his body. Searches of the eight men revealed the following: Maldonado had $1,740 in cash; Gomez had $2,604; Gonzalez had $1,046 and a key to another apartment in the building;

Garcia had $116 and a key to the searched apartment; Pimentel had ten bags of cocaine and $55; Acevedo had $200; Davila had $187 in small denominations; and Montalban had $961 in cash consisting of mostly one, five, ten, and twenty dollar bills and a key to the hallway closet where more drugs were found.

On appeal, the defendants raised both discrete and common issues. They each challenged the sufficiency of the evidence supporting their convictions. Defendants Montalban and Acevedo argued that this court should reverse their cocaine trafficking convictions, in view of the acquittal of Maldonado, Gomez, and Gonzalez on those same charges. Defendant Montalban argued that his trial counsel was ineffective for failing to move to suppress certain evidence. Finally, defendant Pimentel argued that he did not waive his right to a jury trial effectively. We address each issue in turn, and discuss additional facts as they become relevant.

*Discussion. Sufficiency of the evidence.* Each of the defendants presented a motion for a required finding of not guilty at the close of the Commonwealth's case, arguing that the evidence established no more than mere presence at a scene where drugs were found. The judge denied their motions.[2] We review the evidence in the light most favorable to the Commonwealth to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. at 677 (citation omitted). Because the judge did not reveal whether he relied on a theory of joint venture or a theory of constructive possession, the evidence must be sufficient to support both theories. See *Commonwealth* v. *Flynn*, 420 Mass. 810, 818-819 (1995).

1. *Constructive possession.* The defendants were charged with trafficking in cocaine having a net weight of twenty-eight grams or more but less than 100 grams, and with possession of heroin with intent to distribute. Possession of the quantity of cocaine and heroin found in the apartment, as well as the packaging of the drugs and other packaging materials found, would permit an inference of trafficking or of possession with intent to

---

[2]Montalban does not appeal directly from this ruling, but instead claims that his counsel was ineffective for failing separately to request suppression of evidence recovered from a hallway closet. This argument is more properly raised in a motion for new trial. See discussion *infra.*

distribute. See *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 758 (1984); *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 617 (1990), *S.C.*, 410 Mass. 1005 (1991). The "crucial question," then, is "whether the Commonwealth presented sufficient evidence that each defendant possessed the cocaine [and heroin] found." *Commonwealth* v. *Arias*, *supra* at 617. To prove constructive possession, the Commonwealth must show "knowledge coupled with the ability and intention to exercise dominion and control." *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989), quoting from *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. 495, 498 (1984). However, as the *Gonzalez* court recognized, "mere presence in the apartment with knowledge that drugs are present is not enough to show constructive possession." *Commonwealth* v. *Gonzalez*, 452 Mass. at 147, citing *Commonwealth* v. *Boria*, 440 Mass. 416, 421 (2003). Rather, presence must be "supplemented by other incriminating evidence, [which] 'will serve to tip the scale in favor of sufficiency.' " *Commonwealth* v. *Brzezinski*, *supra* at 409-410, quoting from *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977).

Reviewing the same record that is now before us, the Supreme Judicial Court held in *Gonzalez* that "[t]he evidence warranted an inference that the defendants knew that the apartment in which they were present contained, and was used as a base for selling, heroin and cocaine." *Commonwealth* v. *Gonzalez, supra* at 146-147. Specifically, the court concluded that the judge could have reasonably inferred that the three packets found under Pimentel's body were in plain sight just before the officers arrived at the apartment. Similarly, from the scurrying the officers heard just before their entry and the large quantities of drugs found in the same room as the defendants, the judge could have inferred that those drugs were also plainly visible in the room before the officers entered. Finally, the judge could have inferred that the apartment was regularly used for illegal drug activity, due to the large amount of drugs found, the sparsely furnished nature of the apartment, and the barricades attached to the front door. *Id.* at 147.

However, the *Gonzalez* court was careful to point out that the three defendants whose convictions it was reviewing did not simply present "a case of mere presence." *Id.* at 148-149. The "unusually large amounts of cash" found in the possession of

Maldonado, Gomez, and Gonzalez, as well as their "proximity to at least some of the hiding places of the drugs," allowed the reasonable inference that each had "the ability and intention to exercise dominion and control over the drugs found in the living room." *Ibid.* By contrast in this appeal, four of the five defendants had substantially less cash than the defendants in *Gonzalez.*[3] We examine the evidence against each defendant to determine whether presence, "supplemented by other incriminating evidence, will serve to tip the scale in favor of sufficiency." *Commonwealth* v. *Brzezinski, supra* at 410. See *Commonwealth* v. *Gonzalez, supra* at 149 n.6. In doing so, we keep in mind that "the fact that each of these defendants was part of the group of eight present in the single room with the drugs and cash is clearly relevant to an assessment of the over-all sufficiency of the evidence against each of them." *Commonwealth* v. *Gonzalez, supra.* Because the same evidence must also support the theory of joint venture, we turn next to the legal requirements of this theory.

2. *Joint venture.* The evidence under a joint venture theory requires the Commonwealth to show that the defendant (i) was present at the scene, (ii) had knowledge that another intended to commit the crime or had the intent to commit the crime,[4] and (iii) by agreement, was willing and available to help the other if necessary. See *Commonwealth* v. *Lee,* 43 Mass. App. Ct. 164, 167 (1997), citing *Commonwealth* v. *Mahoney,* 406 Mass. 843, 846 (1990). Here, as the *Gonzalez* court recognized, there was sufficient evidence to establish that all the defendants were present at the scene with knowledge that another intended to commit a crime. See *Commonwealth* v. *Gonzalez, supra* at 146-147, 149.

3. *Application of legal theories to the facts.* We consider whether there was sufficient evidence to support both theories in the case against each defendant in this appeal.

a. *Montalban.* Montalban does not appeal the denial of his

---

[3]The fifth, Montalban, carried a significant amount, $961, on his person.

[4]As has been observed, the use of the indefinite article ("a crime") found in some opinions in the definition of joint venture is too broad, leading to a possible determination that two individuals had engaged in a joint venture, even though they each intended to commit "a" (different) crime. See *Commonwealth* v. *Clements,* 51 Mass. App. Ct. 508, 536 n.18 (2001) (Duffly, J., dissenting).

motion for a directed verdict, see note 2, *supra*; instead he claims that his counsel was ineffective for failing to make a separate request for suppression of the evidence found in the hallway closet. We begin with the well-established principle that the preferred method for raising a claim of ineffective assistance of counsel is through a motion for a new trial. See *Commonwealth* v. *Saferian*, 366 Mass. 89, 90 n.1 (1974). Accord *Commonwealth* v. *McCormick*, 48 Mass. App. Ct. 106, 107 (1999), and cases cited ("recommended course" for raising ineffectiveness claim is "making a motion for a new trial accompanied by affidavits, with the potential for an evidentiary hearing and findings").

Were we to consider Montalban's claim nevertheless, it is unavailing. To prevail, Montalban must show not only that his suppression claim likely would have prevailed, but also that "there was a reasonable possibility that the verdict would have been different without the excludable evidence." *Commonwealth* v. *Pena*, 31 Mass. App. Ct. 201, 205 (1991).

We note, first, that Montalban was found to have a large quantity of cash on his person, and we therefore consider him to be in the same posture as the *Gonzalez* defendants. In addition, the search of Montalban revealed a plastic bag containing several empty plastic baggies of the kind used to package cocaine and marijuana, and matching the type of baggies discovered in the dropped ceiling. We conclude that the plentiful amount of cash and the baggies on Montalban's person, coupled with his presence in an apartment where large amounts of drugs were just recently in plain view, precluded a reasonable possibility of a different outcome regardless of the admission of articles found in the closet. We would therefore conclude that his counsel was not ineffective by failing to request suppression of additional evidence found in the hallway closet.

b. *Garcia.* When officers entered the apartment, Garcia was sitting on a couch in the living room. When he stood up, he dropped a key onto the floor, and then hid it under his body. This key fit the lock to the front door of the apartment. That Garcia had the sole key to the apartment among the eight men present supported an inference that he had allowed the other men into the apartment to conduct drug activity, thus supporting a finding of ability and intention to exercise control over the drugs. See *Com-*

monwealth v. *Dion*, 31 Mass. App. Ct. 168, 175-176 (1991) (sufficient evidence to support constructive possession of drugs found in automobile, located near defendant's dwelling, because defendant had the key to the vehicle, attempted to secrete the key during booking, was seen using the vehicle, and was engaged in other illicit drug activity). Contrast *Commonwealth* v. *Sespedes*, 442 Mass. 95, 101 (2004) (where drugs were hidden in apartment, defendant's brief entry into apartment and possession of keys to premises did not establish defendant's knowledge of drugs hidden in apartment). Further, Garcia's conduct in attempting to hide the key permitted an inference of consciousness of guilt, providing further support for constructive possession. See *Commonwealth* v. *Brzezinski*, 405 Mass. at 410 (defendant's retreat into closet that contained contraband, along with his presence in apartment rented to him, cash on his person, and drug packaging material in plain view, supported constructive possession).

As with Montalban, the same evidence permits a finding that Garcia was willing and available to help the others if necessary, and thus the evidence is also sufficient to support a joint venture theory.

c. *Pimentel.* When the police lifted Pimentel from the floor, they discovered three "dime bags" of powder cocaine. Additionally, officers recovered ten more "dime bags" of powder cocaine and $55 in cash from his person. The cocaine recovered from Pimentel was of the same type as cocaine recovered from the living room of the apartment.[5] We have previously held that such similarity is insufficient to support an inference of ability and intention to exercise control over other drugs found nearby. *Commonwealth* v. *Caterino*, 31 Mass. App. Ct. 685 (1991). *Commonwealth* v. *Navarro*, 39 Mass. App. Ct. 161 (1995). However, in resolving the appeals of the three codefendants, the Supreme Judicial Court indicated that it will decline to follow *Caterino* or *Navarro* "to the extent that [those] cases are inconsistent with this opinion." *Commonwealth* v. *Gonzalez, supra* at 150. We take the Supreme Judicial Court's statement as direction to acknowledge the commonsense inferences which may be drawn from a

---

[5] The large amounts of cocaine found in the living room included both powder and "crack" forms of the drug.

suspect's possession of incriminating objects such as drugs, money, or paraphernalia in circumstances where similar or related evidence is found nearby. Because we interpret *Gonzalez* to overrule *Navarro* and *Caterino*, to the extent that they can be read to preclude an inferred relationship to similar or related evidence, we conclude that the record provides sufficient evidence to affirm Pimentel's conviction. Specifically, the thirteen "dime bags" of cocaine found under and on Pimentel's person provide a sufficient inference for the judge to connect him to the larger amounts of nearby drugs of the same type, and to satisfy the *Latimore* standard.[6]

The same evidence, again, permits a finding that Pimentel, if not actively engaged in trafficking, was willing and available to help the others if necessary, and thus is also sufficient under a joint venture theory.

d. *Davila & Acevedo.* As noted above, the Supreme Judicial Court placed significance on the large amounts of cash recovered from the *Gonzalez* defendants. In contrast to those three and also in contrast to Montalban, Davila and Acevedo possessed relatively small amounts of cash ($187 and $200, respectively); no other circumstances linked them to the activity in the apartment.[7] They had neither paraphernalia nor drugs on their persons. Unlike Garcia, they possessed no key or other indicia of control over the premises. And unlike the *Gonzalez* defendants, the record is silent as to their proximity to the drugs.

We are left to determine, then, whether their presence in a sparsely furnished, barricaded apartment, where drugs had recently been in plain view, supports findings of constructive possession and of joint venture for Davila and Acevedo.

We conclude preliminarily that, even without large amounts

---

[6]While our decisions and those of the Supreme Judicial Court have never determined precisely how much cash is sufficient to support an inference of constructive possession of nearby drugs, preferring to consider the question on a case by case basis, the $55 carried by Pimentel is clearly not enough.

[7]"[W]e must consider only the evidence presented during the Commonwealth's case-in-chief in deciding the propriety of the denial of the defendant's motion for a required finding." *Commonwealth* v. *Berry*, 431 Mass. 326, 332 (2000). We therefore do not consider Davila's inculpatory written statement, which was introduced by defendant Montalban after the Commonwealth rested, in deciding whether the prosecution met its burden.

of cash, there was sufficient evidence to establish Acevedo's and Davila's knowledge of the drugs. Knowledge, however, does not establish that they had the ability and intention to exercise dominion and control over the drugs. "In general, intent to exercise control 'is not easily susceptible of proof and is a close question.' " *Commonwealth* v. *Frongillo (No. 1)*, 66 Mass. App. Ct. 677, 682 (2006), quoting from *Commonwealth* v. *Sadberry*, 44 Mass. App. Ct. 934, 936 (1998). Access to the area containing the drugs will not establish intent to exercise control, although it may demonstrate ability to exercise control. For example, in *Commonwealth* v. *Delarosa*, 50 Mass. App. Ct. 623 (2000), both drugs and a firearm were discovered in a closet in an apartment. *Id.* at 625-626. The evidence was sufficient to support a conviction for constructive possession of the drugs, but not the firearm, where there was a permissible inference that the defendant had retrieved a portion of the drugs from the closet, but no evidence connecting the defendant to the firearm. *Id.* at 628. Similarly, in *Commonwealth* v. *Frongillo (No. 1)*, *supra* at 683-684, firearms were found in the closets of the apartment where the defendant had been living. The evidence warranted an inference that the defendant had access to the closets, knowledge of their contents, and the ability to control the contents. *Ibid.* However, where there was no other evidence connecting the defendant either to the closets or the guns, the evidence was insufficient to establish intention to control the firearms. *Ibid.*

The Commonwealth relies upon the scurrying sounds coming from the apartment before the officers entered. Again, this evidence supports a finding of knowledge, as it suggests the drugs were in plain view, but it does not support a finding that Davila or Acevedo intended to exercise control. At most, the scurrying supports an inference that someone in the apartment hid the drugs, but it would be pure speculation to attribute that action to Davila or Acevedo. See *Commonwealth* v. *Handy*, 30 Mass. App. Ct. 776, 779 (1991) (finding insufficient evidence to support the "charge beyond unacceptable conjecture or surmise").

Finally, the Commonwealth relies upon the existence of large amounts of drugs, barricades, and a sparsely furnished apartment, which together warrant an inference that drug activity regularly occurred there. See *Commonwealth* v. *Gonzalez*, *supra*

at 147. However, there is nothing in the record to suggest that Davila or Acevedo had ever visited the apartment previously or were involved in previous drug activity. As these defendants have noted, they were in an apartment watching television with other individuals, one of whom had a key, at 6:00 o'clock in the evening. Contrast *Commonwealth* v. *Arias*, 29 Mass. App. Ct. at 619 (defendants' "presence at an early morning hour in a heavily barricaded apartment, sparsely furnished and in the absence of either the owner or the tenant," held to be "potent evidence" supporting constructive possession). Here, in the absence of any evidence tying Acevedo or Davila to the drugs or the hiding places of the drugs, we cannot conclude that their mere presence in an apartment where drug activity regularly occurred (and had even recently occurred) warrants a finding of intent to exercise control.[8]

*Inconsistent findings.* Montalban and Acevedo argue that their convictions of trafficking in cocaine cannot stand, because the three *Gonzalez* defendants were acquitted of the same crime under almost identical evidence. In Massachusetts, the rule has been long established for jury trials: "[M]ere inconsistency in verdicts, one of which is an acquittal, will not render the verdict of guilty erroneous." *Commonwealth* v. *Sherry*, 386 Mass. 682, 698 (1982), quoting from *Commonwealth* v. *Scott*, 355 Mass. 471, 475 (1969). In *Gonzalez*, the Supreme Judicial Court confirmed that the same rule should apply where the judge is finder

---

[8]We acknowledge dictum in *Gonzalez* which implies that the cash possessed by the other defendants, combined with the circumstances common to everyone in the room, might support an inference of constructive possession even by those defendants who had very little cash. Specifically, the court said: "The defendants' presence in a room with such large quantities of drugs and cash, much of which . . . the judge reasonably could have concluded was in plain view shortly before the officers opened the door, suggests that they were closely involved in the illegal drug sales conducted from the apartment. . . . Because the sparse furnishings and barricades suggest that the apartment was primarily used for drug transactions, they also suggest that all of those present were involved in the activity, not simply aware of it." *Commonwealth* v. *Gonzalez, supra* at 147-148 (citations omitted). We contrast this language, however, with what we conclude to be the holding in *Gonzalez*: "In sum, this is not a case of mere presence. *The large sums of money on each of the three defendants, coupled with their close proximity to at least some of the hiding places of the drugs,* allow the reasonable inference that each of the three had the ability and intention to exercise dominion and control over the drugs found in the living room" (emphasis added). *Id.* at 148-149.

of fact. See *Commonwealth* v. *Gonzalez, supra* at 153-154 (concluding that "[t]he most likely sources of apparent inconsistency are rational ones, such as judicial leniency," and "leniency is not an error that prejudices the defendant, and no reversal or new trial is required"). In light of the *Gonzalez* holding, the issue need not detain us any further.[9]

*Waiver of right to jury trial.* Finally, we reject Pimentel's argument that his waiver of his right to a jury trial was constitutionally infirm. Because he failed to make a timely objection, we review for a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Collado,* 426 Mass. 675, 678 & n.5 (1998); *Commonwealth* v. *Ridlon,* 54 Mass. App. Ct. 146, 147-148 (2002). We conclude from our review of the colloquy that it provided a sufficient basis for the trial judge's conclusion that the defendant voluntarily and intelligently waived his right to a jury trial. See *Ciummei* v. *Commonwealth,* 378 Mass. 504, 509-510 (1979); *Commonwealth* v. *Schofield,* 391 Mass. 772, 775-776 (1984).

The judge advised the defendants that, in a jury trial, twelve people would have to decide unanimously whether the defendants were guilty or not guilty, while in a bench trial, the judge alone would make that decision. He explained that the judge, and not the jury, imposes sentence. He questioned the defendants about their mental states, ingestion of drugs or other substances, and educational backgrounds. He questioned the defendants whether they had conferred with their attorneys on the matter. He twice asked the defendants whether they had been pressured or coerced into waiving their right to a jury trial. In light of this detailed colloquy, we do not find it significant that the judge failed to use specific words (as Pimentel argues, "fundamental," "constitutional," "vital," and "precious") to describe the right to a jury trial.[10] That the judge did not describe every procedural difference set forth in *Ciummei* is also not fatal. The Supreme

---

[9]We discern no material distinction between so-called "charge" inconsistency (acquittal for possession of one drug while being convicted of the other) and "defendant" inconsistency (conflicting results for two defendants in the same circumstances).

[10]Pimentel's citation to *Commonwealth* v. *Abreu,* 391 Mass. 777 (1984), is unavailing. There, the entire "colloquy" consisted of the question, "[D]o I understand that you have waived your right to trial by jury and you want to have the case heard by a single justice through the interpreter?" *Id.* at 778. In contrast, here the colloquy was quite extensive.

Judicial Court made clear in *Ciummei* that it "d[id] not intend to create a rigid pattern" for trial judges to follow. *Ciummei* v. *Commonwealth, supra* at 509-510. See *Commonwealth* v. *Schofield, supra* at 775 ("We did not intend to establish a rule that a defendant's waiver of his right to jury trial will be deemed valid only where a colloquy on the record evidences the defendant was aware of all the differences between bench and jury trials mentioned in *Ciummei*"). See also *Commonwealth* v. *Hardy*, 427 Mass. 379, 383 (1998). There was no error.

*Conclusion.* The judgments against defendants Montalban, Pimentel, and Garcia are affirmed. The judgments against defendants Acevedo and Davila are reversed, the guilty findings are set aside, and new judgments shall enter for these two defendants.

*So ordered.*