## COMMONWEALTH *VS.* ANGEL MONTALVO.

No. 08-P-1159.

Hampden. September 10, 2009. - February 25, 2010.

Present: KATZMANN, BROWN, & WOLOHOJIAN, JJ.

*Controlled Substances. Evidence,* Constructive possession, Inference, Joint enterprise.

At the trial of indictments charging, inter alia, possession of cocaine with intent to distribute, there was sufficient evidence to support the defendant's conviction of possession of cocaine that was thrown out a window by the person standing next to the defendant while the police were approaching, under a theory of constructive possession, where evidence of the defendant's presence in close proximity to the drugs and packaging materials in the open, in plain view, supported an inference that the defendant knew drugs were in the apartment, and where other factors, such as the defendant's presence in a sparsely furnished and heavily barricaded apartment in the absence of either the owner or the tenant, adequately supported a finding that he had the ability and intention to exercise dominion and control over at least some of the cocaine in the apartment [323-326]; however, there was insufficient evidence to support the defendant's convictions as to the element of intent to distribute, where the defendant lacked any traditional tools of the drug trade when he was arrested; where there was no evidence as to how long the defendant had been in the apartment, nor any evidence suggesting that he had settled in as a member of a distribution venture; and where the amount of money the defendant had on his person would have reasonably supported a finding that the defendant was a buyer and was therefore guilty of constructive possession of cocaine, but did not permit this court to say with confidence or assurance that an inference of intent to distribute would be reasonable [327-330].

At a criminal trial, the evidence was insufficient to support the defendant's conviction of possession of heroin, where, in the absence of any evidence that the heroin, which was retrieved from a safe in a closet in the room the defendant was in, was in plain view, no evidence of the defendant's knowledge of the heroin could be inferred. [326-327]

At the trial of indictments charging, among other things, possession of cocaine with intent to distribute, the evidence was not sufficient to support the defendant's conviction as a joint venturer, where there was no evidence linking the defendant to a common venture with the other subjects apprehended at the apartment in question. [330-331]

INDICTMENTS found and returned in the Superior Court Department on June 26, 2007.

A motion to suppress evidence was heard by *C. Jeffrey Kinder*, J.; a motion to dismiss was heard by *Bertha D. Josephson*, J.; and the cases were tried before *Cornelius J. Moriarty, II*, J.

*Patricia Quintilian* for the defendant.

*Marcia B. Julian*, Assistant District Attorney, for the Commonwealth.

KATZMANN, J. After a jury trial in Superior Court, Angel Montalvo (defendant) was convicted of possession of cocaine with intent to distribute, in violation of G. L. c. 94C, § 32A(*c*) and (*d*) (second offender), and possession of heroin with intent to distribute, in violation of G. L. c. 94C, § 32A(*b*) (second offender). He now appeals. While the evidence was sufficient to establish constructive possession of cocaine (but not of heroin), it did not support the element of intent to distribute. Moreover, the evidence did not support the defendant's conviction as a joint venturer.

*Background.* In January of 2007, after receiving complaints of drug activity, the Springfield police department began an investigation of suspected drug dealing at an apartment building located at 143 Belmont Avenue in Springfield, focusing on apartment 3R. Surveillance was established, revealing a high level of foot and car traffic in and around the address. Many people were observed entering and leaving the building, sometimes not staying for more than a few minutes. Additionally, an informant was used by the police to make two controlled purchases of unspecified quantities of heroin from the apartment. With respect to one of those transactions, Officer Bigda testified that the informant was in the apartment for less than two minutes. The informant was debriefed by the police after he made the purchases, and as a result of the information he provided, they drafted a "no-knock" search warrant, describing the subjects who were believed to be inside the apartment on the evening of the purchase. During his surveillance of apartment 3R, Officer Bigda observed that the subjects had a lookout who could give them warning of police arrival. He also observed that many people loitered in the area of the building in which apartment 3R was located, leaving and crossing to a bodega (a convenience store), where small purchases of crackers and chips were made, and then returning to the building.

On January 11, 2007, the police, armed with the no-knock

search warrant, went to apartment 3R to search for illegal drugs. Upon arrival at the premises, the police organized their entry in two squads: one was placed in the front of the building, and the other in the rear; also, one police officer was assigned to stand below the window area.

The police entered apartment 3R through the rear part of the apartment. This entry proved difficult since the occupants had barricaded the rear entrance by adding large sliding deadbolt-type locks to the top and bottom of the door, which were drilled into the door casings. The police thought that they recognized these locks as "New York"-style locks (where two L-brackets are screwed into the door frames, and a wooden two-by-four is slid into the brackets so that the door cannot be forced in). The purpose of these fortifications is to prevent entry by the police or by rival drug dealers who might commit robbery. The officers needed to strike eighteen to twenty blows with a sixty-pound battering ram in order to break down the rear door. Upon entering the apartment's kitchen and proceeding down a long hallway, police officers observed five people crowded near the front door, which was also barricaded from within. By removing the two-by-four laid across the door, the five people were able to get the door open and leave the apartment. Officer Kent pursued these individuals,[1] and Officers Wadlegger and Bigda proceeded with searching the rest of the apartment.

Upon entering the apartment, Officer Bigda observed that the rooms were sparsely furnished and that the apartment did not appear to be inhabited in a traditional sense. There was little in the way of clothing, food, or personal items, and it did not seem as though people actually lived in the apartment.

Officer Wadlegger went into the middle bedroom, where he found the defendant and two other individuals, Santos Ramos (a "ringleader" and the target of investigation) and Armando Revilla. The officer testified that when he entered the bedroom, the defendant, who was wearing a T-shirt (in January), and Revilla "were standing up, just — just kind of like in a startled, didn't know — just standing there." Officer Wadlegger also

---

[1] All five were apprehended. One of the individuals had narcotics and ten dollars in her possession, another had two bags of marijuana, and a third had three bags of heroin, which he attempted to discard prior to his arrest.

observed Ramos throw a bag out the window. The bag was later found to contain fifteen bags of "crack" cocaine totaling 3.45 grams (or one-eighth ounce), known as an "eight-ball," a common unit of measure in the cocaine trade. Eight balls are typically broken down for resale, and each of the fifteen bags (.23 grams) sold for twenty dollars on the street. In the middle bedroom, Officer Bigda saw a small safe in a closet, which was later determined to contain seventy-two bags of heroin and $427. The defendant was standing five or six feet away from the safe when the first police officer entered. On the night stand in the middle bedroom, the officers retrieved a glass plate, three bags containing a white powder that tested negative for cocaine, and several empty bags with white powder residue.[2] The middle bedroom was the only room in the apartment where the police found contraband. They did not recover from the apartment any paraphernalia associated with the use or consumption of either cocaine or heroin. In a search of the defendant's person, the police did not find any paraphernalia or drugs; they found thirty dollars in his possession. No personal papers were recovered in a search of the apartment that would indicate the occupant of the apartment.

Officer Bigda, experienced in narcotics investigations, explained that the drug operation at the premises was "multiperson," meaning that it involved services of more than one drug dealer. The apartment, where the drug operation took place, was of the type commonly known as "hustle houses" or "hot houses," and typically, drug transactions take place at such houses. At such houses, people sell narcotics and also buy narcotics; they may also use narcotics on the premises. Typical of such operations, apartment 3R was heavily barricaded, and fortified with a "New York"-style lock.

*Sufficiency of evidence.* The defendant asserts that there was insufficient evidence to sustain the two convictions. In addressing the defendant's arguments, we must determine "whether, after

---

[2] The empty bags were not tested. Officer Bigda testified that it is not unusual to recover a non-narcotic substance that looks like cocaine and is either loose or bagged for sale. The non-narcotic substance may be used as a cutting agent to dilute cocaine, thus yielding more product to sell. Cutting agent can also be bagged for sale to a less-experienced buyer, and thus are known as "burn bags" or "beat bags."

viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Gonzalez,* 452 Mass. 142, 146 (2008), quoting from *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979). See *Commonwealth* v. *Murphy,* 31 Mass. App. Ct. 901, 901 (1991). "In cases in which the evidence is largely circumstantial, 'it is not essential that the inferences drawn should be the only necessary inferences . . . . It is enough that [the inferences] be reasonable and possible.' " *Commonwealth* v. *Martino,* 412 Mass. 267, 272 (1992), quoting from *Commonwealth* v. *Merrick,* 255 Mass. 510, 514 (1926). With respect to the two counts of conviction, we consider the sufficiency question in terms of the component elements for possession with intent to distribute: first, possession, and then, intent to distribute.

1. *Constructive possession.* As there was no evidence that the defendant actually possessed the seized cocaine and heroin, the first issue before us is whether the defendant constructively possessed them. See *Commonwealth* v. *Sespedes,* 442 Mass. 95, 99-100 (2004); *Commonwealth* v. *Arias,* 29 Mass. App. Ct. 613, 617-618 (1990), *S.C.,* 410 Mass. 1005 (1991). "Proof of possession of a controlled substance may be established by circumstantial evidence, and the inferences that can be drawn therefrom." *Commonwealth* v. *LaPerle,* 19 Mass. App. Ct. 424, 426 (1985). "Possession implies 'control and power,' . . . exclusive or joint . . . , or, in the case of 'constructive possession,' knowledge coupled with the ability and intention to exercise dominion and control." *Commonwealth* v. *Brzezinski,* 405 Mass. 401, 409 (1989), quoting from *Commonwealth* v. *Rosa,* 17 Mass. App. Ct. 495, 498 (1984). "While presence in an area where contraband is found 'alone cannot show the requisite knowledge, power, or intention to exercise control over the [contraband], . . . presence, supplemented by other incriminating evidence, "will serve to tip the scale in favor of sufficiency." ' " *Id.* at 409-410, quoting from *Commonwealth* v. *Albano,* 373 Mass. 132, 134 (1977). See *Commonwealth* v. *Boria,* 440 Mass. 416, 419 (2003); *Commonwealth* v. *Brown,* 34 Mass. App. Ct. 222, 226 (1993).

In the case before us, the evidence was substantial to support the inference that the defendant knew that there were drugs in

the apartment.[3] Upon arrest, the defendant was in the only room where contraband was located, standing next to the ringleader, who threw bags of cocaine out the window when he heard that the police officers were approaching. The defendant was in close proximity to the drugs and packaging materials that were in the open, in plain view. Contrast *Commonwealth* v. *Pimentel*, 73 Mass. App. Ct. 777, 784-786 (2009).

While the defendant is correct that his mere presence in an apartment, coupled with his awareness of the drugs being at the premises, is not enough to establish constructive possession, *Commonwealth* v. *Gonzalez*, 452 Mass. at 147, there are other factors here that adequately support a finding that he also had the ability and intention to exercise dominion and control over at least some of the cocaine in the apartment, and hence support a determination of guilt beyond a reasonable doubt. See *Commonwealth* v. *Pratt*, 407 Mass. 647, 652-653 (1990). The defendant was not present in a location where there were indications of the kinds of human activity that are suggestive of occupancy, contrast *Commonwealth* v. *Pimentel, supra* (no constructive possession where defendants were in an apartment watching television with other individuals, and where record was silent as to their proximity to the drugs), nor was he present in a "traditional" apartment where unbeknownst to him drugs were hidden, *Commonwealth* v. *Sespedes*, 442 Mass. at 100. Rather, the defendant was in a hustle house or hot house. He was in a location where security was extreme; the doors at both entrances were heavily barricaded throughout the duration of the investigation, and it took eighteen to twenty blows for the police to gain entrance. In the particular circumstances presented here, the jury thus could consider that the defendant was in a location dedicated to distribution and purchase of illicit narcotics, and where entry was screened to permit such activity. Moreover, the fact that the defendant was wearing only a T-shirt in January, and was thus not appropriately dressed to be outside, supports a finding that he was not simply passing through.

Although the amount of money found on a defendant can be evidence of culpability, see, e.g., *Pena* v. *Commonwealth*, 426 Mass. 1015, 1018 (1998) (petitioner's arrest "with a large amount

---

[3]The defendant did not testify.

of cash on his person . . . strongly suggests his direct participation in the drug distribution"); *Commonwealth* v. *Frias*, 47 Mass. App. Ct. 293, 294-295, 297-298 (1999) (sufficient evidence because jury permitted to "ascribe meaning to the tableau" of defendants dividing up cash totaling $1,500), the fact that there was only thirty dollars found on the defendant — a sum consistent with the purchase of cocaine, if not the distribution of cocaine — does not defeat a determination of constructive possession. Whether that small amount of money supports a finding of intent to distribute is a separate issue that we consider below.

In sum, while each additional incriminatory or "plus" factor taken alone may vary in terms of persuasive force, "when combined . . . [they] add up sufficiently to allow a jury to find" that the scale was tipped in favor of finding constructive possession of cocaine.[4] *Commonwealth* v. *Maillet*, 54 Mass. App. Ct. 910, 911 (2002). To be sure, "[i]n general, intent to exercise control 'is not easily susceptible of proof and is a close question.' " *Commonwealth* v. *Frongillo (No. 1)*, 66 Mass. App. Ct. 677, 682 (2006), quoting from *Commonwealth* v. *Sadberry*, 44 Mass. App. Ct. 934, 936 (1998). The inferences "need not be necessary or inescapable"; they "must be determined, not by hard and fast rules of law, but by experience and common sense," and "[t]he Government . . . need not exclude every reasonable hypothesis of innocence, provided the record as a whole supports a conclusion of guilt beyond a reasonable doubt." *Commonwealth* v. *Arias*, 29 Mass. App. Ct. at 618 (internal citations omitted). In *Arias*, which is largely controlling here, the defendants were found guilty of constructive possession under similar circumstances: while they did not actually possess the drugs, they were in close proximity to the drugs, and they were present in a sparsely furnished and heavily barricaded apartment. *Id.* at 619. "There could hardly be more potent evidence of an intention by the defendants to exercise dominion and control of the premises and its contents than their presence at an early morning hour in a heavily barricaded apartment, sparsely furnished

---

[4]There may be some circumstances where the totality of the evidence, direct or circumstantial, may link a defendant to a greater amount of contraband than could be purchased by the money found in his possession. Those circumstances are not present here.

and in the absence of either the owner or the tenant." *Ibid.*, quoted and cited with approval in *Commonwealth* v. *Gonzalez*, 452 Mass. at 148. Indeed, we note that in contrast to *Gonzalez*, where the heavy barricades were not in place at the time of the search, *id.* at 147, here, the barricades were in place and required battering of eighteen to twenty blows by the police to be broken down, even more strongly supporting the inference that those inside were involved in illegal activity in what was intended to be a secure environment.[5]

Finally, we conclude that the evidence regarding the heroin conviction stands on different footing from the cocaine. While the evidence, albeit perhaps not overwhelming, was sufficient with respect to constructive possession of cocaine, as to the heroin it was far less persuasive. Two of the officers testified that the seventy-two bags of heroin that were ultimately retrieved were in a safe in a closet in the middle bedroom. Another officer testified that he could not recall whether the safe was in the closet. While Officer Kent testified that the safe, which he described as "small," was open five or six inches, he did not testify whether the heroin bags were in plain view. Indeed, the Commonwealth conceded that "there was absolutely no evidence as to whether or not [the heroin] was in view." The critical evidentiary distinction consists of the visibility of the cocaine as opposed to the invisibility of the heroin. The evidence of the

---

[5]The defendant refers to cases where guilty convictions were reversed based on the fact that the defendant's mere "[p]resence and awareness alone [did] not constitute evidence which warrant[ed] an inference of ability and intention to exercise control of the illicit substance." *Brown*, 34 Mass. App. Ct. at 226. See *Boria*, 440 Mass. at 421; *Commonwealth* v. *Navarro*, 39 Mass. App. Ct. 161, 169 (1995). However, these cases did not involve the "plus" factors tipping the scale in favor of establishing the defendant's guilt. As the Commonwealth properly points out, these cases "represent only examples of the kind of circumstantial evidence thought persuasive on the question of knowledge or constructive possession in particular and distinguishable circumstances." *Arias*, 29 Mass. App. Ct. at 619. "Each instance of a prosecution for possession with the necessary intent has its own singularities, which makes precedent a somewhat imperfect guide . . . ." *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 758 (1984). See *Commonwealth* v. *Gonzalez*, *supra* at 149-150 (discussing *Commonwealth* v. *Navarro*, *supra*, and other cases, and stating that "[t]o some extent, these cases are factually distinguishable from the instant case, but to the extent that the cases are inconsistent with this opinion, we do not follow them"). See generally *Commonwealth* v. *Pimentel*, 73 Mass. App. Ct. at 783-784.

defendant's knowledge of the heroin could thus not be inferred. See *Commonwealth* v. *Sespedes*, 442 Mass. at 100. Nor was there any testimony regarding the price of heroin, or any other evidence tying the defendant to the heroin or to any of the other subjects who might have been linked to the heroin. See *Commonwealth* v. *Delarosa*, 50 Mass. App. Ct. 623 (2000). The evidence thus did not establish that the defendant was guilty of constructive possession of heroin. See generally *Commonwealth* v. *Pimentel*, 73 Mass. App. Ct. at 785-786.

2. *Intent to distribute.* The defendant next contends that there was insufficient evidence to support the element of his intent to distribute the cocaine and the heroin. We agree.

To be sure, "[e]ach instance of prosecution for possession with the necessary intent has its own singularities, which makes precedent a somewhat imperfect guide . . . ." *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 758 (1984). However, there are a number of indicia that have been considered in the assessment of the intent to distribute. These include the possession of large quantities of the contraband, *Commonwealth* v. *Pratt*, 407 Mass. 647, 652-653 (1990); the absence of implements or paraphernalia for personal use, *Commonwealth* v. *Labitue*, 49 Mass. App. Ct. 913, 914 (2000); and the presence of cash in combination with pagers or other accoutrements of the drug trade that are found on a defendant's person, *Commonwealth* v. *Evans*, 436 Mass. 369, 371-372 & n.4, 376-377 (2002). See *Commonwealth* v. *Wooden*, 13 Mass. App. Ct. 417, 423-424 (1982); *Commonwealth* v. *Pena*, 40 Mass. App. Ct. 905, 905-906 (1996).

In this case, when the defendant was arrested, he did not have any traditional tools of the drug trade. While the Commonwealth argued that the fact that the defendant was wearing a T-shirt in January suggests that he was not a buyer or casual visitor, there was no evidence as to how long the defendant had been in the apartment and no surveillance information as to when he had entered; nor was there any evidence linking any of the other clothing in the apartment to the defendant, so as to suggest that he had settled in as a member of a distribution venture. See *Commonwealth* v. *Delarosa, supra* at 628 (no evidence, "such as clothing or papers, of a personal connection between the defendant and the room in which the stash was located"). See also *Commonwealth* v. *Brown*, 34 Mass. App. Ct. at 227 (duration of

defendant's stay in apartment was not established; nor was there evidence connecting her to the person who controlled the apartment). Compare *Commonwealth* v. *Antonio*, 45 Mass. App. Ct. 937, 938 (1998) (defendant's personal belongings found in a bedroom established link).

As we have noted, consistent with Officer Wadlegger's testimony that a typical bag of crack cocaine sold for twenty dollars, the fact that the defendant had thirty dollars on his person would support a finding that he was a purchaser of cocaine. Taken on its own, however, that sum does not support a finding that he intended to distribute drugs. Contrast *Commonwealth* v. *Gonzalez*, 452 Mass. at 148 ("unusually large amounts of cash found in the possession of the three defendants . . . additionally support a finding that they were partners in the enterprise, and in constructive possession of the drugs").

It is true that in *Commonwealth* v. *Arias*, 29 Mass. App. Ct. at 615, we upheld the conviction of trafficking in cocaine against a defendant who was found with only forty-four dollars on his person in a hustle house. However, the issue analyzed in that case was whether the defendant was guilty of constructive possession; the decision does not provide us with guidance with respect to the sufficiency of the evidence establishing intent to distribute. Moreover, in *Arias*, the evidence was that the hustle house was a venue for dissolving and packaging cocaine that was sold to individuals outside the barricaded apartment. *Arias*, 29 Mass. App. Ct. at 615. Thus, there the buyer would slip the money for purchase through a crack in the door of the apartment, in exchange for a bag of cocaine. *Id.* at 614. There was no evidence that the buyers were present within the apartment, or that the transactions were conducted within the apartment, thus supporting the inference that all five men in that apartment were guilty of trafficking. See *Commonwealth* v. *Guerrero*, 32 Mass. App. Ct. 263, 264 (1992) (upholding cocaine trafficking convictions where there was a sparsely furnished barricaded apartment, purchaser would pass money under the door, and within minutes a small plastic baggie containing cocaine was passed back). In the instant case, by contrast, the evidence was that the hustle house was the site for *both* distribution and purchase of drugs. Indeed, the controlled buy was effectuated by sending an informant

into the premises where he exchanged money for the drugs. Unlike in *Arias, Guerrero,* or *Gonzalez* (where there was evidence only of distribution and no evidence that some of the people in the hustle house were buyers), the jury in the present case were presented with the question whether the defendant was a buyer or a distributor.

We note that it could be argued that the fact that the defendant was standing next to Ramos, who tossed out fifteen bags each containing a cocaine rock (a quantity and packaging that might support distribution), was evidence of his intent to distribute. However, given the limited incriminatory evidence here with respect to the defendant, "any view of the Commonwealth's evidence, however favorable, [would] still require[] a leap of conjecture with respect to essential elements of the crime charged in order to obtain a conviction," *Commonwealth* v. *Latney,* 44 Mass. App. Ct. 423, 426 (1998), such that we cannot conclude with confidence or assurance that an inference of intent to distribute here would be reasonable, even taking the evidence in the light most favorable to the Commonwealth. To be sure, "[t]o the extent that conflicting inferences are possible from the evidence, 'it is for the jury to determine where the truth lies.' " *Commonwealth* v. *Martino,* 412 Mass. 267, 272 (1992), quoting from *Commonwealth* v. *Wilborne,* 382 Mass. 241, 245 (1981). At the same time, however, under the familiar standard, "to sustain the denial of a directed verdict, it is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt." *Commonwealth* v. *Latimore,* 378 Mass. at 677-678. While "in carefully defined circumstances . . . a jury [is permitted] to make an inference based on inference[,] . . . a jury may not use conjecture or guesswork to choose between alternative inferences." *Commonwealth* v. *Dostie,* 425 Mass. 372, 376 (1997). A conviction may not rest "upon 'the piling of inference upon inference or conjecture and speculation.' " *Commonwealth* v. *White,* 452 Mass. 133, 136 (2008), quoting from *Commonwealth* v. *Armand,* 411 Mass. 167, 171 (1991). In sum, while there was sufficient evidence to support a finding that the defendant was a buyer and was guilty of constructive possession of cocaine, the

evidence was not sufficient to support the element of intent to distribute.[6]

3. *Joint venture.* In addition to the theory of constructive possession, the Commonwealth proceeded on the theory that the defendant was guilty because he was a participant in a joint venture to sell drugs and the judge instructed the jury on that alternative basis. The defendant argues that there was insufficient evidence of such participation. We agree.

To prove joint venture, the Commonwealth must show that the defendant (1) was present at the crime scene; (2) had knowledge that another intended to commit the crime and shared the intent to commit the crime; and (3) was willing and available to help another to commit the crime if necessary. *Commonwealth v. Netto,* 438 Mass. 686, 700-701 (2003). *Commonwealth v. Hernandez,* 439 Mass. 688, 694 (2003). See *Commonwealth v. Gonzalez,* 452 Mass. at 149; *Commonwealth v. Mattos,* 49 Mass. App. Ct. 218, 222 (2000). Mere presence at the scene of the crime and "failure to take affirmative steps to prevent it do not render a person liable as a participant." *Commonwealth v. Saez,* 21 Mass. App. Ct. 408, 410 (1986), quoting from *Commonwealth v. Benders,* 361 Mass. 704, 708 (1972). Moreover, evidence that a defendant associated with persons who committed the crime does not lead to an inference that he also participated in the crime. *Saez, supra.* The defendant may also be convicted as a joint venturer by proof that he "aid[ed] in the commission

---

[6]In determining the sufficiency of the evidence, we examine the evidence that was presented to the jury, not the evidence that a party wishes were presented. Here, in the closing argument, the Commonwealth stated: "Back in the opening statements[,] defense counsel said to you: Is he a buyer or is he a seller? Ladies and gentlemen, there were no buyers in that apartment. He's a seller and they're all part of the team." The Commonwealth argued that "[n]o one is there [in apartment 3R] to buy," that as a "senior manager[]" of the operation, the defendant was behind the fortified doors in the inner sanctum and shared the proceeds, and that "the people in the middle bedroom were getting the drugs ready to be sold to customers out in the hall." This was not the evidence presented to the jury. Had the evidence or reasonable inferences been as represented by the Commonwealth in its closing, we would be considering a materially different case.

We also note that had the defendant testified and not been credited by the jury, we would also be considering a different case. However, as was his right, he did not take the stand or present a defense, and we review the record in terms of the proof adduced by the Commonwealth.

of a felony, or is an accessory thereto before the fact by counselling, hiring or otherwise procuring such felony to be committed." *Commonwealth* v. *Ortiz*, 424 Mass. 853, 856 (1997), quoting from G. L. c. 274, § 2. In order to sustain a conviction, "[t]here must be proof that the defendant somehow participated in committing the offense, by counseling, hiring or otherwise procuring the principal, by agreeing to stand by, at, or near the scene to render aid, assistance or encouragement if it became necessary, or to assist the perpetrator in making an escape from the scene." *Commonwealth* v. *Ahart*, 37 Mass. App. Ct. 565, 572 (1994), quoting from *Commonwealth* v. *Amaral*, 13 Mass. App. Ct. 238, 242 (1982).

As we have noted, the defendant was present in the hustle house, in a close proximity to the cocaine and packaging materials that were out in the open and in plain view.[7] It is true that one can be a joint venturer to sell drugs without being in possession of the drugs. However, there was no evidence linking the defendant to a common venture with the other subjects apprehended in apartment 3R. None of the controlled buys implicated the defendant. He did not have a pager or other instrumentality evincing distribution or a joint enterprise. There was no evidence of an attempt to protect the contraband or any effort to destroy the drugs. Nor was there any evidence to support a finding that the defendant, even if he did not participate directly in a crime, was ready and available to help the perpetrators. Compare *Commonwealth* v. *Antonio*, 45 Mass. App. Ct. at 938. In short, the evidence was not sufficient to warrant an inference that the defendant was engaged in a joint enterprise. See *Commonwealth* v. *Sanchez*, 40 Mass. App. Ct. 411, 418-419 (1996). Contrast *Commonwealth* v. *Bienvenu*, 63 Mass. App. Ct. 632, 638-639 (2005) (sufficient evidence that defendant constructively possessed cocaine and was a joint venturer).

*Conclusion.* We have determined that the evidence was sufficient to support a finding of constructive possession of cocaine, but not a finding of possession with intent to distribute. On the charge of possession of cocaine with intent to distribute, the judgment is vacated and the verdict is set aside. The case is remanded to the Superior Court where a new finding shall enter

---

[7]As we have noted, there is no evidence that the seventy-two heroin bags recovered from the safe were in plain view, and the Commonwealth so conceded.

of guilt of the lesser included offense of unlawful possession. The defendant is to be resentenced on the lesser included offense of possession of cocaine.[8]

On the charge of possession of heroin with intent to distribute, the judgment is reversed and the verdict is set aside. Judgment shall enter for the defendant.

*So ordered.*

---

[8]See *Commonwealth* v. *Wooden*, 13 Mass. App. Ct. at 424; *Commonwealth* v. *Tripp*, 14 Mass. App. Ct. 997, 999 (1982); *Commonwealth* v. *Reid*, 29 Mass. App. Ct. 537, 538-540 (1990).

In light of our disposition, we need not address the other contentions raised by the defendant. Additionally, as we vacate the conviction of possession with intent to distribute cocaine and remand for sentencing on the lesser included offense — determining that there is no possession with intent to distribute because intent has not been established, and there is no joint venture to possess with intent to distribute because there is no proof of shared intent — the issues presented in general verdict cases are not extant here. Compare *Commonwealth* v. *Flynn*, 420 Mass. 810, 818 (1995).