## COMMONWEALTH *vs.* ANGELITO ACOSTA.

No. 10-P-783.

Essex. September 8, 2011. - June 11, 2012.

Present: KANTROWITZ, GRAHAM, & FECTEAU, JJ.

*Controlled Substances. "School Zone" Statute. Intent. Evidence,* Intent. *Practice, Criminal,* Motion for a required finding.

At a criminal trial, no rational jury could have found beyond a reasonable doubt that the defendant was guilty of possession of cocaine with an intent to distribute without employing speculation or guesswork, where the cocaine possessed by the defendant was not of an amount that alone might raise an inference of an intent to distribute, where no indicia of an intent to distribute were present, and where the opinion of an expert witness for the Commonwealth was premised on facts that he had gratuitously assumed and on conjecture drawn from an insufficient evidentiary foundation; further, in light of this court's reversal of the conviction of possession with intent to distribute, a subsidiary conviction of doing so in a school zone could not stand. [839-844]

COMPLAINT received and sworn to in the Peabody Division of the District Court Department on January 5, 2009.

The case was tried before *Robert A. Brennan,* J.

*Robert J.L. Moore* for the defendant.

*Kenneth Bresler,* Assistant District Attorney, for the Commonwealth.

GRAHAM, J. A jury convicted the defendant of possession of cocaine with intent to distribute and an accompanying school zone offense.[1] G. L. c. 94C, §§ 32A & 32J. On appeal, the

---

[1]The defendant was also charged with operating a motor vehicle under the influence of alcohol (OUI), G. L. c. 90, § 24; resisting arrest, G. L. c. 268, § 32B; and three (civil) motor vehicle infractions. He pleaded guilty to the OUI and resisting arrest charges. The Commonwealth then tried him on the drug charges. "In the usual case (as § 32J seems to contemplate), the school zone charge will be tried together with the predicate charge." *Commonwealth* v. *Taylor,* 413 Mass. 243, 246 (1992).

defendant principally argues that the Commonwealth's evidence at trial was insufficient as matter of law to prove beyond a reasonable doubt he intended to distribute cocaine.[2] We agree.

*Facts.* Based upon the Commonwealth's evidence, reviewed in the light most favorable to it, the jury would have been warranted to find the following. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). On New Year's Day 2009, at 9:30 P.M., Trooper Robert Noonan of the State police was on patrol in a marked cruiser, traveling south on Route 1, a State highway, in the town of Lynnfield, when he noticed a Honda station wagon weaving in and out of the speed lane of the highway. He activated his cruiser's emergency lights and caused the Honda to come to a halt off to the side of the Route 1 roadway; the location of the stop was just shy of the southbound entrance to the Lynnfield tunnel.[3]

Trooper Noonan left his cruiser and approached the Honda on its front passenger side. He directed the driver (the defendant) to roll down the window. With the window down, Trooper Noonan was able to detect a strong odor of alcohol from the defendant. On the floor of the rear passenger compartment, the trooper observed a bottle of Chivas Regal whiskey, approximately three-fourths empty, and a case of beer.

Trooper Noonan ordered the defendant out of the vehicle. The defendant had difficulty complying. Outside the vehicle, the defendant was quite unsteady on his feet, and conspicuously kept his left hand inside the left front pocket of his coat; he continued to do so even after being directed to place both hands on the hood of the Honda. The defendant continued to be unsteady on his feet and had to be restrained by Noonan from walking into oncoming traffic. Noonan grabbed the defendant, placed him under arrest, and removed his hand from the pocket. In the defendant's hand was a clear plastic bag, which held five smaller clear plastic bags with a white powdery substance inside. Testing disclosed that the five small bags, combined, held 3.16 grams of cocaine.

---

[2]Among his assignments of error, the defendant argues the jury verdicts were the product of inadmissible opinion testimony from the Commonwealth's expert witness and prejudicial testimony from the arresting officer.

[3]This location proved to be within 1,000 feet of a private school in the town. The school was shielded from the road by a stand of trees.

Trooper Patrick Silva of the State police soon arrived at the scene with a police dog trained to alert for narcotics. Noonan had since secured the defendant in the rear of his cruiser and thereafter transported him to a nearby barracks for booking. Meanwhile, Silva had the defendant's vehicle impounded and towed to a location off the highway where he conducted a search of the vehicle. Inside the vehicle was the defendant's wallet, which, in its billfold, had two open bags containing small amounts of white powder, later determined to be cocaine; the two bags, combined, weighed .14 grams. No other narcotics were found.

The vital question for the jury was whether the defendant had possessed the cocaine with the intent to distribute, as charged in the complaint. In its case, the Commonwealth called Troopers Noonan and Silva, as percipient witnesses; Trooper Brian Robert, who testified that, when the defendant was stopped, he was within 1,000 feet of a school zone; and Trooper James Bruce, who was assigned to the Essex County drug task force, as a nonpercipient narcotics expert whose qualifications are not contested.

The sole defense witness was the defendant. He was then forty-nine years of age. He flatly denied having an intent to distribute cocaine to anyone.

Trooper Noonan testified that, after the stop, he had removed from the defendant's hand the five "baggies" containing a white powdery substance, which he believed to be cocaine due to the manner of its packaging. Each bag, he recounted, had consisted of a corner torn from a plastic sandwich bag, which was "twisted" and "knotted" shut, containing cocaine with a street value of about forty dollars.[4]

The narcotics expert, Trooper Bruce, testified as to the street trade for cocaine. He explained that cocaine is commonly packaged, sold, and bought in the form of "small twist bags" that

---

[4]Trooper Noonan also testified to the defendant's behavior following his arrest, stating that the defendant, while in the back seat of the cruiser, had become "aggressive," "spitting" on the floor and on the rear cage, "hocking up large amounts of phlegm," and "smashing" his knees against a plexiglass divider between the cruiser's front and rear compartments. The defendant lodged an objection to this testimonial account of postarrest misconduct. The judge overruled the objection and admitted the evidence.

contain one-half to one gram apiece. He opined that the five glassine bags of cocaine were consistent with distribution, and that the two open bags in the billfold of the defendant's wallet were consistent with personal use.[5] Bruce testified that a half-gram bag could yield between "8 to 10 individual lines" (or "dosages") of cocaine for a user to inhale. He concluded the five twist bags were "for sale" because the total amount of cocaine therein (3.16 grams) was "a lot of cocaine to be using all at once."

Evidence as to the school zone was also introduced and admitted in the Commonwealth's case. The defendant moved for a required finding of not guilty when the Commonwealth rested, and again at the close of all the evidence. The judge denied both motions.[6]

*Discussion.* A motion for a required finding of not guilty is allowed if the evidence of the Commonwealth is insufficient as a matter of law to sustain a conviction for the offense at issue. *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985). Mass. R.Crim.P. 25(a), 378 Mass. 896 (1979). We apply the *Latimore* standard: namely, in considering the Commonwealth's evidence in its entirety and in the light most favorable to the Commonwealth, we inquire whether any rational fact finder could have found all essential elements of the crime beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. at 677-678.[7] See *Commonwealth* v. *Renaud, ante* 261, 262 (2012). The elements for the crime here are (1) knowingly or intentionally possessing the illegal substance (i.e., cocaine), and (2) doing so with the specific intent to distribute. Intent may be inferred from the surrounding facts proved at the trial provided any such inference is reasonable. *Commonwealth* v. *Gollman*, 436 Mass.

---

[5]The Commonwealth introduced evidence about the search of the impounded Honda automobile, which led to the discovery of two open plastic bags inside the billfold of the defendant's wallet.

[6]Opposing the motion in a conference with the judge, the Commonwealth argued the following as to intent: "He's got stuff ready and able to pass on to people at the party. He's got this thirty-pack of beer. He's not going to consume all that stuff in his car." The judge pointed out there was no evidence the defendant was traveling to a party before being stopped.

[7]No premium is given to direct evidence as opposed to mere circumstantial evidence, for both may support a conviction.

111, 116 (2002). *Commonwealth* v. *Clermy*, 37 Mass. App. Ct. 774, 778, *S.C.*, 421 Mass. 325 (1995).

The defendant does not contest the adequacy of the evidence as to the element of possession; rather, on appeal, he challenges the sufficiency of the evidence as to the element of intent to distribute.

We consider "only the evidence introduced up to the time that the Commonwealth rested its case, and the defendant first filed his motion[] for [a required finding of not guilty]." *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 (1976).[8] "[I]t is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense." *Commonwealth* v. *Latimore, supra* at 677. No element of the crime may be left to a jury's guesswork or surmise. *Commonwealth* v. *Rivera*, 460 Mass. 139, 141 (2011). The evidence will be insufficient to support a conviction if it merely "pil[es] inference upon inference or conjecture and speculation," *Commonwealth* v. *Mandile*, 403 Mass. 93, 94 (1988), or if it tends "equally to support either of two inconsistent propositions." *Commonwealth* v. *Rhoades*, 379 Mass. 810, 817 (1980).

Consistent with the foregoing principles and based on the evidence in the Commonwealth's case-in-chief, we are persuaded that no rational jury could have found beyond a reasonable doubt that the defendant was guilty of possession of cocaine with an intent to distribute without employing speculation or guesswork.

The defendant possessed 3.16 grams of cocaine in five twist bags. As for the remaining trace amount of cocaine in two open bags, the Commonwealth concedes that it was for personal use. The police had stopped him for a motor vehicle infraction on Route 1 in the vicinity of Lynnfield.[9] The time was 9:30 P.M. on New Year's Day. He was drunk. No exchange or transaction was witnessed.

---

[8]While it is not relevant to the sufficiency of the Commonwealth's evidence, the defendant testified at trial that he purchased five baggies of cocaine for his personal use from a seller on a street in Chelsea for $170. He also testified that he received two smaller bags from that dealer to "test" the drugs, and he put those particular bags inside his wallet.

[9]Trooper Noonan testified that Route 1, from Boston to Lynnfield, was a high crime area for drugs. No evidence (apart from the trooper's anecdotal account) was introduced to support this bare assertion.

The cocaine possessed by the defendant is not of an amount that alone may raise an inference of an intent to distribute, nor does the Commonwealth so contend. Compare *Commonwealth v. Ellis*, 356 Mass. 574, 578 (1970) (fifty-six bags of heroin); *Commonwealth* v. *Bongarzone*, 390 Mass. 326, 344 (1983) (300 pounds of marijuana); *Commonwealth* v. *Pratt*, 407 Mass. 647, 652-653 (1990) (forty-four bags of heroin); *Commonwealth* v. *Gill*, 2 Mass. App. Ct. 653, 656-657 (1974) ("hundred some-odd" bags of heroin). Nor was there anything distinctive or unique about the five twist bags to indicate they were intended for transfer or sale as opposed to personal use. More probative evidence (i.e., "indicia" or "plus factors") was needed in order to allow a rational trier of fact to find, beyond a reasonable doubt, that the defendant intended to distribute cocaine. In other like situations, when a relatively small amount of drugs was at issue, the "Commonwealth could rely on the presence of various items used to manufacture or distribute drugs." *Commonwealth* v. *Roman*, 414 Mass. 642, 645 (1993). "Each instance of a prosecution for possession with the necessary intent has its own singularities, which makes precedent a somewhat imperfect guide . . . ." *Commonwealth* v. *Sendele*, 18 Mass. App. Ct. 755, 758 (1984).

"[T]here are a number of indicia that have been considered in the assessment of the intent to distribute," *Commonwealth* v. *Montalvo*, 76 Mass. App. Ct. 319, 327 (2010), including but not limited to distinctive packaging indicative or suggestive of distribution; possession of large quantities of drugs; the presence of implements or paraphernalia indicative of the drug trade; and the "presence of cash in combination with pagers or other accoutrements of the drug trade" found on the defendant. *Ibid.* See *Commonwealth* v. *Maillet*, 54 Mass. App. Ct. 910, 911 (2002). No such indicia were present or introduced here.

The Commonwealth's evidence was not only "ambiguous," but it also lacked specificity as to intent. *Commonwealth* v. *Andrews*, 49 Mass. App. Ct. 201, 204 (2000) (2.73 grams packaged in eleven envelopes "does not, without more, clearly tend towards showing an intent to distribute"). The defendant possessed no accoutrements of the drug trade. He had no cash. Nor did he have a cellular telephone, beeper, or pager. He had no scale or other

measuring device. Furthermore, he was driving a vehicle on a highway and plainly not loitering in an area known for drug transactions.

The Commonwealth relies on the opinion testimony of its narcotics expert to meet its burden of proof. A qualified narcotics expert is permitted to offer an opinion based upon a hypothetical "grounded in facts in evidence, as being 'consistent with' a drug transaction." *Commonwealth* v. *MacDonald,* 459 Mass. 148, 162 (2011). Initially, the expert here improperly made a direct unequivocal comment as to the defendant's guilt, by testifying, "But the number of bags here? I would say they're offered for sale."[10] As to the five twist bags, the expert compounded the error by stating, "that's a lot of cocaine to be using all at once."[11] Later, on direct, the prosecutor posed a hypothetical:

> "Trooper, based on your training and experience, if, for example, there was cocaine that was approximately four grams, packaged in seven different packages, with a street value of approximately $300, where the items were kept separately and where the items were kept in a pocket, do you have an opinion of if this is more consistent with distribution or personal use?"

"[I]t's a component of each," the expert opined, "it's personal use and also the distribution." A close reading of the expert's testimony reveals his opinion hinged on critical assumptions: namely, a user would not consume 3.16 grams of cocaine "all at once" or over the course of a day, and thus, a user buying

---

[10]Qualified opinion testimony, properly admitted, informs jurors generally of the significance of evidence related to a fact-based issue, which ultimately must be decided by them alone. Opinion testimony may "touch" on an ultimate issue in the case, *Commonwealth* v. *Cruz,* 413 Mass. 686, 690 (1992); *Commonwealth* v. *Cyr,* 425 Mass. 89, 96 (1997), if couched in appropriate language, but an expert cannot directly speak to, or express a point-of-view about, the issue of the defendant's guilt or innocence. *Commonwealth* v. *Tanner,* 45 Mass. App. Ct. 576, 579 (1998). *Commonwealth* v. *Grisset,* 66 Mass. App. Ct. 454, 457-458 (2006).

[11]The expert conceded early in his testimony that he could not give an opinion of an average user's consumption of cocaine on a given day. He explained that "cocaine use is so prevalent that there are people that have been using it for decades and people that have been using it for weeks. I can't really say what the average is because I don't think that such a thing exists."

this amount, everyday or regularly, must be selling. Bruce testified that "a couple $40 bags every day can run into some money" and "if you get ten [bags] because you only were going to use three over a couple of days by selling those seven you're getting free cocaine." His testimony is wholly speculative. It was mere conjecture that the cocaine was to be used all at once or to be sold. There was no evidence that the defendant was buying cocaine, of any amount, every day or on a regular basis.[12] Nor was there any evidence that the defendant was in want of money to buy drugs. He was gainfully employed. And, by altering the material facts — i.e., purchase *ten* bags and *use three* — the expert offered the jury a web of assumptions that had no evidentiary connection to the defendant.[13] The trooper's opinion was premised on facts that he had gratuitously assumed and conjecture drawn from an insufficient evidentiary foundation, and, as such, his opinion was inherently flawed and legally incompetent. With this deficient evidence, the jury were left to speculate as to the defendant's intent.

The expert testimony also had a not-so-subtle pernicious aspect. The expert flatly described "anyone" (including the defendant) using 3.16 grams of cocaine as an "addict." The end served by identifying the defendant as an addict before the jury was to bring a more general and insidious charge that this was a man of dangerous criminal propensities, who, because of those propensities, was more likely than not to sell cocaine. The law forbids the Commonwealth to endeavor to fasten guilt upon a defendant by intimations of his character predisposing him to a

---

[12]In answer to the inquiry whether it was conceivable that the defendant "had the foresight to buy his cocaine ahead of time [and] that he bought seven bags of cocaine to use them," the expert answered, "I don't think it's likely." He added, "I mean the very nature of an addiction, in my experience talking to hundreds of addicts, if you put one bag of cocaine in front of them over the course of the day they're going to do that." Trooper Bruce suggested that, in his experience (which he admitted did not include any degrees in behavioral psychology or related fields), "[p]eople . . . don't buy this quantity to ration it out over the course of a day"; he remarked that "[a]nyone who's possessing this quantity," referring to the amount of cocaine found on the defendant, "there's a level of addiction involved or they're selling it."

[13]The expert conceded that, in preparing for his appearance at trial, he had not read the official police report in this case or the laboratory notes for the certificates of drug analysis prepared by the police. Nor did Bruce interview the defendant, review the defendant's records, or speak to his family or friends.

criminal act. "The defendant's character was not in issue and, as all agree, could not have been used to show criminal propensity." *Commonwealth* v. *Kozec*, 399 Mass. 514, 525 (1987). We believe "any view of the Commonwealth's evidence, however favorable, still requires a leap of conjecture with respect to [an] essential element[] of the crime charged in order to obtain a conviction." *Commonwealth* v. *Latney*, 44 Mass. App. Ct. 423, 426 (1998). See *Commonwealth* v. *Merry*, 453 Mass. 653, 663 (2009).

*Conclusion.*[14] On the count of the complaint charging possession of cocaine with intent to distribute, the judgment is vacated. So much of the verdict as finds the defendant guilty of the lesser included offense of possession of cocaine is to stand; the remaining portion of the verdict (with intent to distribute) is set aside. The case is remanded to the District Court for resentencing on the lesser included offense of possession of cocaine.

On the count of the complaint charging a school zone violation, the judgment is reversed, the verdict is set aside, and judgment shall enter for the defendant.

*So ordered.*

---

[14]It is unnecessary to address the defendant's remaining claims, including those related to the school zone charge. The subsidiary school zone conviction cannot stand in light of the reversal of the conviction of possession with intent to distribute.