Codefendants Luis Taveras and Daileen Cruz were each convicted of distribution of heroin and an accompanying school zone violation. On appeal Taveras argues, among other things, that the evidence was insufficient to show that he engaged in a joint venture to distribute heroin. Cruz raises three arguments: her confrontation rights were violated when the judge allowed a substitute chemist to testify as to the identity of the substance that was tested; the judge erred by allowing a State trooper to testify as both a percipient witness and an expert witness; and the evidence was insufficient to establish that the substance was heroin. We agree with Taveras that there was insufficient evidence to prove his participation in a joint venture and therefore reverse his convictions.[3] We affirm Cruz's convictions.
Background. We summarize the facts, and the reasonable inferences therefrom, in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). State Trooper Brian Anderson was conducting undercover operations in the city of Lawrence when he was approached by a man, later identified as Christian Sepulveda, who asked Anderson if he was "all set." Anderson replied that he was looking for "a $20 of brown,"[4] and Sepulveda replied in turn that he "only sold $30 bags." Because Anderson had only twenty-dollar bills, he went into a nearby store to get change. He and Sepulveda then walked together for a couple of blocks, whereupon Sepulveda asked for the money. Anderson responded that he was not willing to turn it over until he had the drugs.
Sepulveda then crossed the street and approached Cruz, who was sitting next to Taveras on the front porch of a house. After a hand-to-hand exchange with Cruz, Sepulveda walked back across the street with his hand clenched and gave Anderson a small clear bag with a tan powdered substance inside. Anderson gave Sepulveda a twenty-dollar bill and a ten-dollar bill in exchange.
Trooper Brian O'Neil was surveilling the transaction from a nearby undercover vehicle. He saw Sepulveda separate the bills and place one in his pocket while walking back across the street. Sepulveda then gave Taveras the bill that was in his hand. After Sepulveda left the area, O'Neil approached Cruz and Taveras, who were still sitting on the porch. O'Neil searched Taveras and found a ten-dollar bill but nothing else. Cruz was never searched, and no evidence was presented that the twenty-dollar bill was recovered.
Discussion. 1. Taveras's appeal. We review the evidence in the light most favorable to the Commonwealth to determine whether any "rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt." Commonwealth v. Mendez, 476 Mass. 512, 523 (2017). Taveras was convicted on the theory that he engaged in a joint venture with Cruz and Sepulveda to distribute heroin. He argues to us that the evidence was insufficient to prove beyond a reasonable doubt that he was guilty of distribution under that theory. We agree.
To convict a defendant as a joint venturer, the Commonwealth must prove "that [he] knowingly participated in the commission of the crime charged, and that [he] had or shared the required criminal intent." Commonwealth v. Zanetti, 454 Mass. 449, 467 (2009). "Mere presence at the scene of the crime and the 'failure to take affirmative steps to prevent it do not render a person liable as a participant.' " Commonwealth v. Saez, 21 Mass. App. Ct. 408, 410 (1986), quoting from Commonwealth v. Benders, 361 Mass. 704, 708 (1972). Circumstantial evidence may be used to show knowledge and intent; however, association with a person who commits a crime "does not lead to an inference that [the defendant] also participated in the crime." Commonwealth v. Montalvo, 76 Mass. App. Ct. 319, 330 (2010). "Rather, there must be some additional proof that the defendant 'consciously ... act[ed] together [with the principals] before or during the crime with the intent of making the crime succeed.' " Commonwealth v. Gonzales, 475 Mass. 396, 414 (2016), quoting from Zanetti, 454 Mass. at 470.
Here, the evidence does not support a finding beyond a reasonable doubt that Taveras consciously acted together with Cruz and Sepulveda before or during the crime with the shared intent to distribute heroin. Certainly, as the Commonwealth argues, the jury could have inferred that the ten-dollar bill Sepulveda gave to Taveras was the same one Trooper Anderson gave to Sepulveda in exchange for the heroin. But while this established a possibility, maybe even a probability, that Taveras had the requisite knowledge and criminal intent, it did not allow a rational jury to so conclude beyond a reasonable doubt. See Commonwealth v. Russell, 470 Mass. 464, 474 (2015), quoting from Victor v. Nebraska, 511 U.S. 1, 15 (1994) (proof beyond reasonable doubt requires "jury to reach a subjective state of near certitude of the guilt of the accused"); Gonzalez, 475 Mass. at 417 (defendant's conviction could not be sustained based only on possibility or probability that she participated in joint venture). There was no evidence that Taveras interacted with either Cruz or Sepulveda before or during the transaction or that the three of them had previously agreed that Taveras would receive a portion of the proceeds. Taveras was not found with drugs or drug paraphernalia, a large amount of cash, cellular telephones or pagers, or anything else that would be indicative of drug dealing. His convictions rest solely on evidence that he was present during the sale and afterwards accepted ten dollars from Sepulveda. This was not enough for a rational jury to conclude beyond a reasonable doubt that he was part of a joint venture to distribute heroin.
Our conclusion is consistent with past decisions in which we reversed convictions for drug distribution based on insufficient evidence of a joint venture. The evidence in those cases was demonstrably stronger than, or comparable to, the evidence here.[5] We reject the Commonwealth's assertions that in this case the expert testimony of Trooper O'Neil tipped the scale in favor of sufficiency. O'Neil gave general testimony that it was "customary" that multiple people would be involved in a street-level transaction and would have made "arrangements" regarding profit. Even adding this testimony to the scale, the evidence was still insufficient to prove beyond a reasonable doubt that Taveras himself engaged in a joint venture with Cruz and Sepulveda, requiring reversal of his convictions.
2. Cruz's appeal. We reject each of the arguments raised by Cruz. She first contends that her confrontation rights were violated when the judge allowed a substitute chemist to testify that, after reviewing the report generated by the original chemist,[6] his opinion was that the tested substance contained heroin. This argument is unpreserved because Cruz raised no objection at trial. In any event, we see no meaningful distinction between the testimony in this case and the testimony deemed to be permissible in Commonwealth v. Greineder, 464 Mass. 580, 594-599 (2013), and Commonwealth v. Grady, 474 Mass. 715, 723-724 (2016). We are bound by those decisions.
Next, Cruz argues that the judge abused his discretion by allowing Trooper O'Neil to testify as both a percipient witness and an expert witness, over Cruz's objection. Although it is not preferred practice, "[a] percipient police witness may also testify as an expert witness, though care should be taken in presenting such expert testimony." Commonwealth v. Ortiz, 50 Mass. App. Ct. 304, 306-307 (2000). The officer must not opine directly on the defendant's guilt or innocence. See Commonwealth v. Tanner, 45 Mass. App. Ct. 576, 579 (1998). In determining whether an officer's expert testimony was permissible, we focus on whether the testimony was "explanatory," as opposed to "conclusory," i.e., "couched simply in terms of whether a defendant did or did not commit a particular offense" (emphasis omitted). Id. at 581.
Here, O'Neil's expert testimony was confined to explaining how certain undercover operations are conducted and what is customary in street-level narcotics transactions. The testimony was explanatory and did not cross the line into expressing a direct opinion about Cruz's guilt. Contrary to Cruz's characterization, O'Neil did not testify that "it was 'a fact' that a drug transaction had taken place." Rather, he testified that he did not conduct a fingerprint analysis on the bag given to Anderson because he knew for a fact "where it had come from" based on his observations as a percipient witness. We discern no abuse of discretion in the admission of his testimony.
Finally, Cruz argues that there was insufficient evidence to prove that the substance in the bag was heroin. We disagree. As discussed above, the judge properly admitted the substitute chemist's opinion that the substance contained heroin. Moreover, O'Neil testified that he has "seen heroin packaged for sale thousands of times" and the substance in the bag "was consistent in the packaging and the color and the texture of all the other heroin [he has] dealt with." Anderson similarly testified that he believed that the "off-white, tan type powdered substance" he received was heroin and that it was consistent with the appearance of heroin he had seized in the past. The jury could also infer that Anderson received what he requested from Sepulveda, via Cruz. See Commonwealth v. Resende, 475 Mass. 1, 17 (2016) (rational jury could infer undercover officer received drugs he requested). This evidence taken together was sufficient for a rational jury to conclude that the substance was heroin.
Conclusion. As to Cruz, the judgments are affirmed. As to Taveras, the judgments are reversed, the verdicts are set aside, and judgments are to enter for Taveras.
So ordered.
Affirmed as to one defendant; reversed and judgments entered for other defendant.

Given our ruling, we do not address Taveras's other arguments except to the extent they overlap with those of Cruz.

Anderson testified that "brown" is street terminology for heroin.

See Saez, 21 Mass. App. Ct. at 411-412 (defendant looked up and down street, suggesting he acted as lookout, while dealer conducted sale and later hid bundle of heroin in yard); Commonwealth v. Meehan, 33 Mass. App. Ct. 262, 264-265 (1992) (defendant and alleged coventurer were surveilled for eighteen months and observed conversing privately three times on night of arrest; defendant was found with $317 in his pocket, $4,630 hidden in his crotch, and "a list of names and dollar amounts of a type commonly associated with drug transactions," which he tried to conceal; and coventurer was found with 39.32 grams of cocaine, large amount of cash, and similar lists with names and numerical notations); Montalvo, 76 Mass. App. Ct. at 324, 331 (defendant was present in "hustle house" standing next to "ringleader" of drug operation and in close proximity to drugs and packing materials in plain view). In each of these cases, we reversed based on insufficient evidence of a joint enterprise to engage in drug distribution.

The original chemist had taken a new job in Canada by the time of trial.