Following trial in the Superior Court on an indictment charging trafficking in heroin, a jury convicted the defendant of the lesser included offense of possession with intent to distribute, in violation of G. L. c. 94C, § 32.[2] On appeal, the defendant argues that the Commonwealth's proof was insufficient to support the conviction. For the reasons that follow, we affirm the conviction.
1. Evidence. We recite the evidence in the light most favorable to the Commonwealth. Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979) (Latimore ). Commonwealth v. Pratt, 407 Mass. 647, 649 (1990).
a. Investigation. In December, 2014, the defendant lived in the first-floor apartment at 192 Adams Street in the Dorchester section of Boston, with her husband, Armando Figueroa Morales; her adult (autistic) son; and her brother. During that same month, the Massachusetts State police commenced an investigation of suspected drug dealing from the defendant's apartment. Police surveillance was established, which revealed a high level of short duration visits by persons, who came (by foot or vehicle) to the apartment and then left after no more than a few minutes.
On December 11, the police conducted a trash pull at the target location. This search yielded "dozens" of plastic sandwich bags with the corners cut off; two digital scales; prescription bottle in the name of Armando Figueroa Morales; a Children's Hospital visitor identification badge in the name of Jocelyn Figueroa; and papers addressed to 192 Adams Street. The next day, the police obtained a search warrant.
On the morning of December 15, with the warrant in hand, the State police arrived at the defendant's home. Initially, at 10:55 A.M. , the police observed Morales leave the apartment and walk toward the intersection of Adams Street and Dorchester Avenue. Two troopers, who had been stationed inside a vehicle at this intersection, then stepped outside and approached Morales, patted him down, felt some bulky items in his pants pockets, and retrieved from one pocket five plastic twist bags, each containing heroin, with their combined weight amounting to 38.55 grams. The troopers arrested Morales and transferred his custody to other troopers nearby. Moments later, another team of State troopers executed the search warrant for the apartment.
b. Search. Using a key provided by Morales to gain entry into the apartment, troopers knocked on the door, announced police presence, and declared that they were executing a search warrant. Once they were inside, troopers observed the defendant, dressed in a nightgown, sitting at a table in the kitchen. The defendant identified herself as "Jocelyn Figueroa," but police later determined that her true name was Glaciris Hidalgo.
i. Kitchen. In plain view, directly in front of the defendant on the kitchen table, was a plastic bag containing a powdery substance. Testing disclosed that the bag held 4.80 grams of heroin. Next to this bag of heroin was a wallet that held, in addition to cash, two plastic bags, each containing heroin, the combined weight being 1.36 grams. In sum, the defendant was sitting within arms' reach of 6.16 grams of heroin in three plastic twist bags.
Items commonly used to weigh, package, and sell heroin were found in the kitchen. Specifically, (a) on the kitchen floor, no more than two feet from where the defendant was sitting, a closed backpack held a working digital scale and a prescription bottle under the name "Gregorio Delone"; (b) an open box of plastic sandwich bags was either on a kitchen counter or cupboard; and (c) two cellular telephones (cell phones) and a cordless telephone were out in the open on the kitchen table.
The police did not find a weapon or contraband on the defendant herself. The police advised the defendant of her Miranda rights and placed her under arrest. The police also came upon the defendant's son, and her brother, in the two front (smaller) bedrooms. The son became distraught because of the sudden police presence in the home, and given his formidable size, the scene at the outset was somewhat chaotic until police were able to calm him. A search of the remainder of the apartment then commenced.
ii. Marital bedroom. Troopers searched a bedroom, which, by all indications, appeared to be the marital bedroom. It was the largest of the bedrooms; had a closet containing clothes for a female and male; and had the largest bed. Between the mattress and the box spring, police found a blue pen cap that contained a small plastic bag with what was later determined to be cocaine. The bedroom had personal effects of the defendant and a "pack-and-play" with children's clothes. In or near a nightstand, police found several cell phones. In another nightstand, being used as a television stand, the police found cash ($4,100) hidden underneath the bottom drawer.
Also, inside or on top of a dresser, the police found cell phones, digital cameras, a notebook, and a purse.[3] The notebook had loose papers as well as one page, with handwriting, listing names, numbers, and dollar signs. The purse contained scraps of paper with pin numbers and the names of third parties; two Boston Children's Hospital visitor's badges, both dated December 14, 2014, one in the name of "Joselin Figueroa" and the other for one Gregoria Deleon; and a debit card (with expiration date, "09/18") in the name of Armando Figueroa Morales.
2. Discussion. At trial, the defendant did not contest the fact that she had knowledge of the heroin found in the apartment and that she then had the physical ability to exercise control over the heroin. She claimed, however, that there was insufficient evidence of her intent to exercise dominion and control over the heroin, and on that basis, at the close of the Commonwealth's case, defense counsel moved for a required finding. Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979). The judge denied the motion and submitted the case to the jury.
a. Possession. The defendant was convicted of possession of a controlled substance, heroin, with intent to distribute it, a crime that has three elements: (i) possessing a controlled substance, (ii) knowingly and intentionally, (iii) with the specific intent to distribute it. Commonwealth v. Lezynski, 466 Mass. 113, 118 (2013). Possession may be actual or constructive, joint or exclusive. Constructive possession means "knowledge coupled with the ability and intention to exercise dominion and control." Commonwealth v. Deagle, 10 Mass. App. Ct. 563, 567 (1980). See Commonwealth v. Brzezinski, 405 Mass. 401, 409 (1989). The Commonwealth was not obligated to prove that the defendant was physically holding the heroin.
That said, mere presence in an area of a shared apartment where drugs are found cannot prove constructive possession. There must be additional incriminating evidence linking the defendant to the heroin. Commonwealth v. Gonzalez, 452 Mass. 142, 146 (2008). Commonwealth v. Velasquez, 48 Mass. App. Ct. 147, 149 (1999). Similarly, a person's mere association with a known drug dealer, in and of itself, is not enough to permit an inference of drug possession. Commonwealth v. Booker, 31 Mass. App. Ct. 435, 437 (1991). This was not a situation, however, of mere presence or association. Several interlinked pieces of incriminating evidence, brought out by the Commonwealth at trial, in combination, permitted an inference of the defendant's intent to control the heroin.
b. Additional incriminating evidence. The defendant was not a mere bystander. She lived in the apartment, "a relevant inculpatory factor to be considered" by the trier of fact. Commonwealth v. Handy, 30 Mass. App. Ct. 776, 781 n.3 (1991). See Commonwealth v. Rarick, 23 Mass. App. Ct. 912, 912 (1986). The fact that the defendant was sitting alone at the kitchen table, directly in front of and within arms' reach of a bag of heroin, bears on intent to exercise control. Commonwealth v. Monson, 57 Mass. App. Ct. 867, 870 (2003). A backpack holding a digital scale, a common tool of the drug trade, was close by her feet. An open box of plastic bags, commonly used for packaging heroin, was out in the open in the kitchen.
In the master bedroom, the contents of a purse suggested drug dealing. The purse held an EBT card in the name of a third party as well as scraps of paper with names, including the EBT card owner, monetary amounts, and pin numbers; these items were found amidst two Boston Children Hospital visitor badges dated December 14, 2014 (i.e., the day before the police search) -- one in the name of "Joselin Figueroa" and another in the name of "Gregoria Deleon"[4] -- and a debit card bearing the name Armando Figueroa Morales. The Commonwealth's expert testified that dealers often accept EBT cards or credit cards as payment for drugs. Also, in the master bedroom was a notebook with names, numbers, and dollar signs, suggestive of a ledger, commonly used by drug dealers, in some form or another, to track "what anybody owes them."
Piece by piece, this inculpatory proof, as a whole, tended to link the defendant to the heroin in her home and suggested that she possessed it for distribution, as opposed to personal use. See Commonwealth v. Rarick, 23 Mass. App. Ct. at 912 ; Commonwealth v. Montalvo, 76 Mass. App. Ct. 319, 325 (2010).
Constructive possession is a legal conclusion based on factual inferences rooted in the evidence. "The inferences drawn by the jury from the evidence 'need only be reasonable and possible and need not be necessary or inescapable.' " Commonwealth v. Kelly, 470 Mass. 682, 693 (2015), quoting from Commonwealth v. Longo, 402 Mass. 482, 487 (1988). The Commonwealth is not required to "exclude every reasonable hypothesis of innocence, provided the [evidence] as a whole supports a conclusion of guilt beyond a reasonable doubt." Commonwealth v. Delarosa, 50 Mass. App. Ct. 623, 628 (2000). If, as here, the evidence permits possible conflicting inferences, "it is for the jury to determine where the truth lies, for the weight and credibility of the evidence is wholly within their province." Commonwealth v. Lao, 443 Mass. 770, 779 (2005), S.C., 450 Mass. 215 (2007). The defendant's claim of innocence circumvents reasonable inferences that the evidence permitted, by arguing that the evidence (in her view) "tends equally to sustain either of two inconsistent propositions" (i.e., constructive possession of heroin, or not), therefore, "neither one can be said to have been established by legitimate proof." Berry v. Commonwealth, 393 Mass. 793, 796 (1985). See Commonwealth v. Fancy, 349 Mass. 196, 200 (1965). This is not a case like Commonwealth v. Acosta, 81 Mass. App. Ct. 836, 840-844 (2012), where we concluded that the prosecution's evidence left an essential element (intent to distribute) entirely to speculation or guesswork.
Here, the Commonwealth's evidence established interlinked inferences, from which the jury could reasonably find that the defendant constructively possessed the heroin with intent to distribute it. We conclude that there was no error in denying the motion for a required finding.
Judgment affirmed.

A second indictment was dismissed with the consent of the defendant.

The defendant highlights the absence of certain items one might expect within a woman's purse to negate the inference that the purse was currently used by her. While this may be a point in the defendant's favor to be argued to the jury, it is not one that establishes, as a matter of law, that the purse was not hers.

This name was nearly identical to the name, Gregorio Delone, which was on the prescription bottle in the backpack found close by the defendant, in the kitchen. The hospital badges in the purse further linked the defendant to the backpack and the scale inside, which is a common tool of dealers in the street trade.